[Civ. No. 4920. Third Appellate District.—April 22, 1935.]

C. A. CRANE et al., Respondents, v. EAST SIDE CANAL & IRRIGATION COMPANY (a Corporation), Appellant.

Fred B. Wood, Norris J. Burke, Hugh K. Landram, I. M. Peckham and Richard H. Fuidge for Appellant.

Treadwell, Laughlin & Treadwell and C. Ray Robinson for Respondents.

THE COURT.—On rehearing we are persuaded there is evidence to support the judgment for damages on the doctrine of anticipatory breach of the contract.

The complaint originally included two counts. The second count referred exclusively to a demand for alleged damages to the land of George S. Bloss, Jr., which was subsequently dismissed. This appeal will therefore be considered as though C. A. Crane were the only plaintiff in the action.

The defendant has appealed from a judgment of $19,200, which was rendered against it pursuant to a verdict returned in a suit for damages based on anticipated depreciation of the value of farm land on account of the inability of the defendant to fulfill the terms of a contract to furnish plaintiff C. A. Crane with water for the purpose of irrigation. After accepting the obligation of a contract to supply the plaintiff with water the defendant conveyed its water rights to other parties so that it is unable to supply the water in fulfillment of the agreement. During more than twenty years that the plaintiff owned the land which is involved in this suit he never used any water provided for by the contract. The cause, however, is based on the doctrine of anticipatory breach of contract and the expected damages as a result thereof.

For more than twenty years the plaintiff, C. A. Crane, has been engaged in the cattle business. During all of that time he owned 1280 acres of grazing land which is included in adjacent sections 19 and 30, township 8 south, range 12 east, M. D. B. & M., in Merced County. This land is situated about ten miles southwest of the city of Merced. It is located twelve miles south of the Merced River, three miles north of the San Joaquin River and fifteen miles easterly from the confluence of these two streams. In the vicinity of that property are Owens Creek, Duck Creek, Mariposa Creek and Dead Man Creek. The Mariposa Slough also lies to the south of plaintiff's land. This land

is comparatively flat and level. It has never been cultivated for crops. It has always been used exclusively for grazing cattle thereon. There is evidence that, with proper cultivation, the land is adaptable for and would produce barley, rice and alfalfa.

For more than forty years J. J. Stevinson, who was also engaged in the cattle business, owned a vast tract of land consisting of thousands of acres occupying the intervening space between the Merced River and the San Joaquin River westerly from plaintiff's property. Stevinson also possessed riparian, prescriptive and appropriative water rights in that vicinity incident to both the Merced River and the San Joaquin River. March 21, 1898, Stevinson conveyed these water rights to the defendant, East Side Canal & Irrigation Company, a corporation, of which he was then president and principal stockholder. The Occidental Land & Improvement Company, a corporation, which then owned sections 19 and 30 hereinbefore mentioned, also owned valuable and extensive water rights in the same vicinity. On the last-mentioned date, in consideration of conveying to the defendant corporation, a right-of-way across sections 19 and 30 to be used for the construction and maintenance of an irrigation canal, it executed and delivered to the owner of those sections of land a contract, by the terms of which it was agreed the grantee and its successors in title would furnish the grantor of the right-of-way, and its successors, "all the water that may be required" for irrigating sections 19 and 30, not to exceed .14 cubic feet of water per second, to be paid for at the rate of not to exceed $2 per acre. This contract also provides that in consideration of the sum of $25 for each season, the owner of the land may close the canal gates in August and September of any year to flood the land east of the canal to a depth of not to exceed 18 inches, for the purpose of irrigating the soil to produce grass or pasture. The contract provides that the water rights "form a part of the appurtenances to said described land (of the plaintiffs) and the right thereto shall be transferable only with and run with said land, and that the party of the second part is bound by this instrument to all subsequent owners of said land". Sections 19 and 30 were subsequently conveyed to the plaintiff, who ever since has owned and still does own that land. The agreement referred to reads in part:

"That the said party of the first part does hereby sell and convey to the said party of the second part, its successors and assigns forever, a right of way for an irrigating canal upon and through sections nineteen (19) and thirty (30).
. . .

"Said second party agrees for itself, its successors and assigns, that it will deliver and furnish to the first party from the main canal above mentioned, all the water that may be required, not exceeding at any time, fourteen (14) cubic feet of water per second, for the purpose of irrigating said sections . . . from the first day of March, 1898, and during the existence of said corporation and its successor or successors in interest, and that it will charge and collect from said first party, its successors and assigns, for said water, such rate per acre, irrigated as may be charged and . collected for other lands irrigated by water from said canal, providing, however, that in no one year shall said charge for water for irrigating said lands exceed the sum of Two (2) Dollars, per acre, for each acre irrigated.

"Said second party also agrees that upon payment to it or its successors in interest, of twenty-five (25) dollars, said first party may, in August or September of any year, for the purpose of irrigating the natural grass or pasture upon those parts of sections nineteen (19) and thirty (30) . . . close the canal gates and back the water over so much of said lands as it will cover when standing to a height of eighteen (18) inches above the general level of land on east line of right of way on the east bank of the canal.

"It is understood and agreed that the water to be furnished under this agreement is intended to form a part of the appurtenances to said described land and the right thereto shall be transferable only with and run with said land, and that the party of the second part is bound by this instrument to all subsequent owners of said land but to no other person or persons.

"It is covenanted and agreed by the parties hereto that the party of the second part shall not be responsible for the deficiency of water caused by drouth or insufficiency of water in the river, temporary damage by flood or other accident, but that the party of the second part shall employ due diligence at all times in restoring and protecting the flow of water in its canal."

At no time prior to the commencement of this suit did the plaintiff ever request the defendant to furnish him with water nor did he use water pursuant to the terms of the preceding contract.

March 19, 1928, in consideration of the sum of $200,000, and of the dismissal of all pending actions involving water rights, the defendant corporation and J. J. Stevinson conveyed to the Southern California Edison Company, a corporation, the absolute right to "take, divert, use and store water", without limitation of time, from the San Joaquin River for irrigation and for hydro-electric power purpose, together with "an easement in the canals and works" of the defendant. The sole condition of this grant of water rights is that the Edison Company shall return the water used for power purpose to the San Joaquin River at a point "above Herndon in Fresno county", which is above the property of the plaintiff. So also, on January 21, 1929, in consideration of the sum of $100,000, and the dismissal of all pending suits involving water rights, J. J. Stevinson, a corporation, conveyed to seven other water companies all of its water rights on the San Joaquin River within Merced County.

As a part of the consideration for the grants last mentioned, the defendant and J. J. Stevinson dismissed the actions in all pending litigation involving their water rights. The respondent contends the conveyances of these water rights and the dismissal of these pending suits render it impossible for the defendant to fulfill its previous contract of March 16, 1898, to supply plaintiff with water to irrigate his land in sections 19 and 30, if he should desire the use of that water at any time in the future. It is asserted by the respondent that this conduct on the part of the defendant constitutes an anticipatory breach of the contract to furnish the plaintiff with water, which authorizes the maintenance of a suit for damages for all loss which is reasonably attributable thereto.

Upon that theory this suit was commenced. It was tried with a jury which returned a verdict of $25,000 in favor of the plaintiff. On a motion for new trial the amount of the judgment was reduced by the trial court to $19,200, which sum was accepted by the plaintiff as satisfactory. From that judgment the defendant has appealed.

On appeal it is contended the conveyance of the water rights and the dismissal of the suits by the defendant do not constitute an anticipatory breach of the contract to furnish plaintiff water; that the verdict and judgment are not supported by the evidence for the reason that there is no competent evidence of past or future damages, and because there is no evidence that plaintiff ever did use water under the terms of the contract, or that it is probable he ever will require the use of the water for that purpose in the future. It is also asserted the court erred in receiving evidence and in giving to the jury and refusing to give certain instructions.

We are of the opinion the evidence in this case shows an anticipatory breach of the contract on the part of the defendant to furnish the plaintiff with water for irrigation of sections 19 and 30, township 8 south, range 12 east, in Merced County, by the defendant conveying to other parties all of its title to nonriparian water rights in that vicinity, and thus rendering it practically impossible for the grantor to fulfill the agreement. An anticipatory breach of contract occurs on the part of one of the parties to the instrument when he positively repudiates the contract by acts or statements indicating that he will not or cannot substantially perform essential terms thereof, or by voluntarily transferring to a third person the property rights which are essential to a substantial performance of the previous agreement, or by a voluntary act which renders substantial performance of the contract impossible or apparently impossible. (1 Restatement of the Law of Contracts, p. 475, sec. 318; 6 Cal. Jur., p. 457, sec. 273; 3 Elliott on Contracts, p. 206, secs. 2028–2039; 3 Page on Contracts, p. 2220, secs. 1436–1443.)

The appellant asserts that the doctrine of anticipatory breach of contract does not apply to the facts of this case, under our California decisions, for the reason that it has been held the mere conveyance of real property, or an interest therein, by a party to a previous contract for its sale before the time of performance does not necessarily prevent the grantor from fulfilling the agreement since he may subsequently acquire the title thereto by a reconveyance of the property before the agreed time of performance, enabling the vendor to thus fully perform the terms of the

contract. The earlier California cases to that effect, however, are distinguished by the case of *Brimmer* v. *Salisbury,* 167 Cal. 522 [140 Pac. 30], wherein it is said that if the vendor conveys the property *without protecting the rights of the other contracting party* under an unfulfilled executory agreement, the subsequent conveyance will be deemed to be a breach of the contract so as to entitle the injured party to sue for all damages accruing as a result thereof on the doctrine of anticipatory breach of contract. That case holds that the contract is not breached if the vendor of the land does convey it subject to the prior rights assured by the contract, or otherwise protects those rights against the subsequent conveyance. The court says in that regard:

"Our adjudications hold that in an action for breach of contract based upon a conveyance by the vendor to a third person during the existence of such an executory contract of sale, the averment merely that the vendor has sold does not state a complete cause of action, the reason being given in *Easton* v. *Montgomery,* 90 Cal. 307 [25 Am. St. Rep. 123, 127 Pac. 280], and repeated and reaffirmed in the Shively case, and again in the Garberino case. . . . *A vendor will not have breached his contract if he shall have conveyed the property subject to or under circumstances such as do protect the rights of his vendee.* . . . Where a vendee contracts with one having none or an imperfect title, he contracts in the hope or expectation that the vendor may be able to perfect the title. Such is not the case where the vendor has title and thereafter parts with it. . . . It is of course no answer to say that the vendor may be able to go into the market and purchase the property. Common experience tells us that such an expectation is in its nature but a remote possibility and that such a vendor has not the slightest intention of so doing."

The Brimmer case, *supra,* contains a complete review of the previous leading cases in California regarding that subject, and it holds that the mere conveyance of real property in violation of the express terms of a previous executory contract to sell land to another person may not be deemed to be a breach of the agreement unless the vendor fails to transfer the property subject to the prior rights secured by the executory contract or fails in some manner to protect the prior rights. It is there said: "A vendor will not have

breached his contract *if he shall have conveyed the property subject to or under circumstances such as do protect the rights of his vendee."* It follows that if the property is conveyed without protecting the interest secured by a previous executory contract with relation thereto, the subsequent transfer of title does constitute a breach of the previous agreement which authorizes a suit for damages on the doctrine of anticipatory breach of contract. (*Heden* v. *Point Reyes Land Co.,* 185 Cal. 121, 125 [196 Pac. 44].) In the present case the water rights were conveyed by the defendant without attempting to protect the interest of the plaintiff. There is no reasonable probability that the defendant ever will or can repossess these water rights so that it could fulfill the contract with plaintiff. The doctrine of anticipatory breach of contract therefore applies to the circumstances of this case.

The respondent contends there is no satisfactory evidence of detriment to the plaintiff on account of the conveyance of the defendant's water rights for the reason that for more than twenty years after the execution of the contract of March 21, 1898, the plaintiff continued to use the land only for grazing stock and never exercised the right to purchase water under the provisions of the contract during that entire period of time, or at all. He continued to use the land, as he had previously used it, without irrigation. There is evidence that the land, under proper cultivation, would produce barley, rice or alfalfa, but there is no evidence that the plaintiff ever intends to use it for that purpose. There is no direct evidence that the natural growth of grass on the property, which was relied on by the plaintiff to feed his stock would ever be affected by the lack of water which might have been supplied under the terms of the contract. The only evidence of alleged damages for anticipatory breach of the contract was furnished by four witnesses who testified that the market value of the property with the water rights attached thereto as provided by the terms of the contract prior to January 21, 1929, when the water rights were conveyed, was from $50 to $75 an acre, and that the market value of the land without the water rights was only $25 per acre. With the exception of the testimony of one witness, this evidence was adduced over the objection of the appellant that "It is incompetent, irrele-

vant and immaterial, . . . and is not a proper measure of valuation and not based upon the evidence in this case''.

After reargument of the cause and careful research we are of the opinion the proper measure of damages was applied under the circumstances of this case. It is true that the California cases have uniformly held that the measure of damages for a breach of contract to supply real estate with water for the purpose of irrigation during a specified limited period of time is the difference in the rental value of the land with and without the water. (*Fresno Canal & Irr. Co.* v. *Perrin,* 170 Cal. 411 [149 Pac. 805]; *Pallett* v. *Murphy,* 131 Cal. 192 [63 Pac. 366]; *Crow* v. *San Joaquin etc. Irr. Co.,* 130 Cal. 309 [62 Pac. 562, 1058]; 67 C. J., p. 1444, sec. 1117; 3 Kinney on Irrigation and Water Rights, p. 3135, sec. 1698.) From an examination of the California authorities it appears that all of these cases were founded on damages accruing on account of a loss of water for only a single season, or for a specified limited period of time. Under such circumstances it appears to be a just and reasonable method of ascertaining the damage to prove the difference between the rental value of the land with and without the use of water. In the present case, however, the alleged damage arising from an anticipatory breach of the contract to furnish water for irrigation purpose, is a permanent detriment to the freehold. The contract specifically provides that the water rights ''form a part of the appurtenances of said described land and the right thereto, and . . . (shall) run with the land''. This suit is based on an alleged breach of the contract resulting in a permanent failure to supply the water, as distinguished from a temporary omission to do so, and affects the plaintiff's easement in the water as a perpetual and inseparable part of his real property. Under such circumstances, the mere difference between the rental value of the land for a single season or for a limited period of time, does not furnish an adequate measure of damages. When there is a breach of contract to permanently furnish water for the purpose of irrigation during all future time, we assume that the only just and adequate rule of estimating the damage to the freehold is to ascertain the difference between the market value of the land with and without the water to be supplied according to the terms of the contract, similar to

the measure of damages which applies in eminent domain proceedings.

The most serious question to be determined in this case is whether the damages which were awarded are not too remote and uncertain since it appears without conflict of evidence that the plaintiff failed for some twenty years to exercise his privilege to use the water according to the terms of the contract. The appellant asserts that it is too speculative to assume that the plaintiff might desire to use his land to raise alfalfa, barley or rice, in the future, when for twenty years in the past he has used it only for grazing purpose without irrigation. But the evidence is uncontradicted that the land is adaptable for that purpose, and it does not appear to be too remote, uncertain or speculative to assume that the owner of the land or his successor in interest may reasonably desire to cultivate and use it for that purpose. In this case full opportunity was afforded the appellant to cross-examine witnesses or supply evidence to refute the plaintiff's positive showing that the land is reasonably adaptable to the cultivation and raising of crops of alfalfa, rice or barley. It has been definitely held that it is competent to prove the various "practical purposes to which land is naturally adaptable" as a proper element in ascertaining the market value thereof. (*City of Santa Ana* v. *Harlin,* 99 Cal. 538 [34 Pac. 224] ; *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48, 53 [186 Pac. 772].) We are unable to say that the award of damages is excessive. It amounts to only $15 per acre of the land which is affected by the breach of contract.

The appellant assigns the modification and refusal to give certain of its instructions as erroneous. We are satisfied there was no error in that regard. The first instruction complained of contained the statement that the contract in question requires the defendant to use "due diligence at all times in restoring and protecting the flow of water in its canal". It then recited certain principles which it assumes would constitute due diligence on the part of the defendant, including the ordinary definition of that term as the conduct which a reasonably prudent person would use under like circumstances, and concluded by saying that "If you find that the defendant at all times used due diligence in restoring and protecting the flow of water in its canal, you

will bring in a verdict for defendant". The instruction was given to the jury after eliminating therefrom the recital of the definition and circumstances deemed to constitute due diligence. The modification of this instruction was not erroneous. The instruction does not appear to be applicable to the issues of the case. The portion of the challenged instruction which is quoted was given to the jury. The damages were awarded on the theory that the contract was repudiated by the defendant by transferring its water rights so as to render it practically impossible for it to fulfill the agreement. Moreover, the instruction, as it was presented, is obscure. In reciting the circumstances which are deemed to constitute due diligence on the part of the defendant, it was said that it "would depend on all the circumstances, to-wit, financial burden, number of invasions, claims and rights, if any, of the invaders, and any and all other circumstances". We are of the opinion this language is uncertain and erroneous. The "financial burden" of the defendant would not excuse it from "protecting the flow of water in its canal". Nor do we believe that a mere limitation of the "number of invasions" of its water rights would determine the question of the necessity of exercising diligence in protecting the flow of water in its canal. In our opinion the instruction was properly modified. At least the modification was not prejudicial.

The court properly refused to give defendant's proposed instruction which charges that if the plaintiff failed to use the water for a beneficial purpose, to which he was entitled under the contract, for a period of time, and that some stranger to the contract subsequently succeeded in acquiring either riparian or appropriative rights to a portion of such water, then the plaintiff would thereby forfeit his right to future delivery of water under the terms of the agreement. This instruction appears to be inapplicable to the issues of this case. The plaintiff claimed no appropriative or riparian rights as against the defendant. He relied solely upon his contractual rights under the terms of the agreement. The fact that he failed to use the water for a period of time and that strangers to the contract were permitted to acquire prescriptive or riparian rights against the defendant in nowise affected their contract. (*Copeland* v.

*Fairview Land & Water Co.,* 165 Cal. 148 [131 Pac. 119].) The defendant was bound by the terms of its contract to exercise due diligence to prevent strangers from interfering with its water rights, and to preserve those rights so that it could fulfill its contract with the plaintiff.

■ We are unable to perceive that this case presents equitable issues which require the adoption of findings by the court independently of the implied findings of the jury. It does not appear that the appellant so contended at the trial, or that he offered to the court any proposed findings upon any issue in the case. We are of the opinion findings were unnecessary.

We find no error in the rulings of the court upon the defendant's demurrer to the complaint, his motion to strike out portions of the complaint, or regarding the introduction of evidence during the course of the trial.

The judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1935.