### EAST SIDE CANAL & IRRIGATION CO. et al. v. UNITED STATES.

#### No. 46266.

Court of Claims.

April 5, 1948.

Edward F. Treadwell, of San Francisco, Cal. (Treadwell & Laughlin, of San Francisco, Cal., on the brief), for plaintiffs.

Ralph S. Boyd, of Washington, D. C., and A. Devitt Vanech, Asst. Atty. Gen. for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiffs sue for the alleged taking of their appropriative rights to certain waters of the San Joaquin River. They allege that they were deprived of these rights by the building of the Friant Dam on the San Joaquin River in California.

The East Side Canal and its water rights were acquired by plaintiff Stevinson Water District on January 19, 1938, but, by some sort of informal arrangement between it and plaintiff East Side Canal & Irrigation Company, the details of which are not shown in the record, the Canal Company

continued to operate the canal until January 1, 1944, when the Water District executed a formal lease to the Canal Company of all its interests in the canal and water rights.

These corporations are interrelated. George J. Hatfield and members of his family own all the stock of the 3–H Securities Company. This company owns or controls the East Side Canal & Irrigation Company and James J. Stevinson, a corporation. The latter corporation owns all the land, with minor and unimportant exceptions, within the Stevinson Water District.

The water rights of the Canal Company and the Stevinson Water District were subordinate to the rights of Miller & Lux and certain other prior rights. With exceptions not material to this discussion, Miller & Lux had the right to all the water of the river, leaving none for plaintiffs, except in times of spring high water, which occurred ordinarily in the months of April, May and June. Plaintiffs, subject to the rights of Miller & Lux, Inc., and certain other prior rights, had the right to divert 245⅞ cubic feet of water per second whenever there was as much as 281 cubic feet a second of water available in the river, and at other times ⅞ of all the water flowing at the head of their canal. These rights, plaintiffs say, have been taken by the erection of the Friant Dam, which appropriated all the plaintiffs' water. See Gerlach Livestock Co., et al. v. United States, Ct.Cl., 76 F.Supp. 87.

In addition to its other defenses discussed in Gerlach Livestock Company et al. v. United States, defendant interposes two additional defenses in this case. It says that prior to the taking, if any, plaintiffs had alienated their right to the water of this river, or if they had not alienated it, they had forfeited their right to it because of non-user.

■ 1. Defendant says that the Canal Company relinquished all of its right to the waters of the San Joaquin River by virtue of a contract entered into on January 21, 1929, between James J. Stevinson, a corporation, and the Miller & Lux in-

terests. One of the provisions of this contract required the East Side Canal & Irrigation Company to dismiss suits it had brought against the Miller & Lux interests over their respective water rights. This was done. Later, a man by the name of Crane, who had a contract with the East Side Canal & Irrigation Company for the delivery of specified quantities of water to Crane's land, brought suit against the Canal Company alleging that by the dismissal of its suits against the Miller & Lux interests it had rendered itself incapable of delivering to Crane's land the water it had contracted to deliver. The Court of Appeals of California in Crane v. East Side Canal & Irrigation Co., 6 Cal. App.2d 361, 44 P.2d 455, 458, held:

"We are of the opinion the evidence in this case shows an anticipatory breach of the contract on the part of the defendant to furnish the plaintiff with water * * * by the defendant conveying to other parties all of its title to nonriparian water rights in that vicinity, and thus rendering it practically impossible for the grantor to fulfill the agreement."

Defendant says that this is a judicial determination that the Canal Company had conveyed all of its rights to the water of this river.

Plaintiffs say that this statement of the court was in error, that the Canal Company had not conveyed all of its water rights, and they further say that the court's holding that they had done so was unnecessary to its decision and, therefore, not binding on us.

Plaintiffs are correct. Crane owned land adaptable to the cultivation of crops on his land which would require a continuous supply of water throughout the irrigating season. The East Side Canal & Irrigation Company had contracted to furnish him with this water. When the Stevinson corporation entered into its contract with the Miller & Lux interests, and the East Side Canal & Irrigation Company dismissed its suits against Miller & Lux, it did render itself incapable of fully carrying out its contract with Crane to furnish him with water throughout the irrigation season. However, the Miller & Lux interests

never insisted at any time that they had the right to deprive the East Side Canal & Irrigation Company of the right to receive water of the San Joaquin River in times of spring high water, ordinarily occurring in the months of April, May, and June. At such times more water came down the river than the Miller & Lux interests could use and the Canal Company received and used a part of the excess as a matter of right. It continued to receive water from the river during the year until Miller & Lux erected in the stream what is known as the Sack Dam, at Temple Slough. This was erected whenever the Miller & Lux interests began to need all of the water of the river for the satisfaction of their prior rights. This occurred at various times in the year, but ordinarily between the first and fifteenth of July. Up to this time, however, the Canal Company received, and had a right to receive, water from the river. By the contract of January 21, 1929, it did not alienate this right, although it had rendered itself incapable of furnishing water throughout the irrigation season.

■ 2. The question of whether or not plaintiffs have forfeited their right to the use of the water of this river by non-user is a more difficult one.

During the periods of high water on the San Joaquin River the Canal Company had available water from two sources, from the San Joaquin River and from streams and man made laterals that flowed into the canal from the east, below the points where water from the San Joaquin emptied into the canal. All these streams flowed into the canal above the lands irrigated by waters from it.

During the high water period these streams from the east get their water from the Merced Irrigation District pursuant to a contract entered into between this company and the Stevinson Corporation. Under this contract the Merced Irrigation District was required to spill into east side channels leading into the canal from the east not less than 24,000 acre-feet of water per year. It was also agreed that if the District spilled into these channels more than 24,000 acre-feet per year, the Canal Company was privileged to use this excess water, but there was no obligation on the District to spill more than 24,000 acre-feet per year. The findings show that the water actually spilled into these channels was sufficient for all the needs of the Canal Company in all of the years from 1935 to 1941.

At the same time that the Canal Company was receiving this water from the Merced Irrigation District it was also receiving water from the San Joaquin River. The supply from the two sources being more more than it needed, some of it was released at points where Duck Creek, Owens Creek and Bear Creek flowed into the canal, known as Bear Creek Spillway, Owens Gate, and Three Bridges Spillway. Defendant says that since the water from Duck Creek, Owens Creek and Bear Creek filled the canal full, there was no room for the water of the San Joaquin River, and, hence, that the water spilled at these spillways was water from the San Joaquin River.

It is clear that the Canal Company relied primarily on the water received from the Merced Irrigation District. The Canal Company serviced crop lands requiring water throughout the irrigation season. It got water from the Merced Irrigation District throughout the irrigation season, but it got water from the San Joaquin River only in times of spring high water, ordinarily not later than July 1, or July 15, about three months before the irrigation season was over. We cannot say, however, that the Canal Company did not rely upon the water of the San Joaquin River and that it had abandoned its right to use it.

We stated above that the Merced Irrigation District was obligated to furnish the Canal Company only 24,000 acre-feet per year. As the findings show, this amount was insufficient to supply its needs. Had the Merced Irrigation District furnished no more than 24,000 acre-feet per year, the Canal Company would have used water from the San Joaquin River in an average amount of 220 acre-feet in April, 827 acre-feet in May, and 1,285 acre-feet in June.

The Canal Company maintained this supply in reserve. It constantly maintained the canal from its intersection with Duck Creek to the points where it received water from the San Joaquin River and its sloughs. At all times during high water this part of the canal was filled with water ready for use in case the supply from the Merced Irrigation District fell below the canal's needs. This negatives the idea of an intent to abandon.

After the building of the Friant Dam this reserve supply was no longer available to plaintiffs. For the taking of the right to use this water, if the right still existed, we think defendant is liable. The right to use it remained in plaintiffs unless they had forfeited it by non-user.

Defendant is probably correct in saying that the water spilled at the Bear Creek Spillway, Owens Gate, and at the Three Bridges Spillway was the water of San Joaquin River. This is probably so because of these physical facts. The water from the Merced Irrigation District flowing down Duck Creek, Owens Creek, and Bear Creek came into the canal from the east. The spillways from the canal were located on the west. The water from the San Joaquin River meeting the water from Duck Creek, Owens Creek, and Bear Creek necessarily veered off to the west, and when the spillways on the west were opened it would seem that it was this water that flowed down the spillways.

This would indicate that the Canal Company from 1935 to 1941 did not use the water from the San Joaquin River, except to hold some of it in reserve, but used, instead, the waters from the Merced Irrigation District; nor, so long as the Merced Irrigation District fulfilled its obligation under the contract, would it have any use for any part of it, except that part necessary to supply the deficiency in case the Merced Irrigation District released to it only 24,000 acre-feet per year.

Under section 20a of Act 9091, Stats. 1917, c. 554, sec. 2, p. 748 of the General Laws of California we are of opinion that the Canal Company for a period of more than three years had not used the waters of the San Joaquin, except the amount held in reserve, and that the balance, accordingly, had reverted to the public. This section reads:

"Reversion of water on non-user for three years. When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested, for the purpose for which it was appropriated or adjudicated, for a period of three years, such unused water shall revert to the public and shall be regarded as unappropriated public water."

This statute was enacted in 1917. Under it and under the facts set out above we think it correct to say that the Canal Company for a period of more than three years had failed to use the water of the San Joaquin, except so much of it as is held in reserve to supply a possible deficiency in the water from the Merced Irrigation District. The findings show that the maximum amount used in the month of April during the period 1935 to 1941 was 1,189 acre-feet, in the month of May 1,797 acre-feet, and in the month of June 3,588 acre-feet. We are of opinion that the right to the water in excess of these amounts had been lost by non-user. Lindblom v. Round Valley Water Co., 178 Cal. 450, 173 P. 994.

■ The defendant is correct in saying that an intent to abandon need not be shown. Lindblom v. Round Valley Water Co., supra; Smith v. Hawkins, 110 Cal. 122, 42 P. 453. Under the California statute it is only necessary to show a failure to beneficially use it. It is not open to doubt that the Canal Company did not in fact use more than these amounts during a period of more than three years.

■ However, we are of opinion that plaintiffs, by holding in reserve water sufficient to fill these needs, did beneficially use it. Cf. Lindblom v. Round Valley Water Co., supra; Duckworth v. Watsonville Water & Light Co., 158 Cal. 206, 110 P. 927.

Plaintiffs in fact maintained this reserve in the upper reaches of their canal ready for use in case of a deficiency in Merced

River water. Since the Merced Irrigation District might decide at any time to furnish only the water it was obligated to furnish, plaintiffs were under the necessity of maintaining this reserve. They had acquired a right to this water and would be seriously prejudiced if this right were taken away from them. If this were done, they might find it impossible to furnish all the water they had contracted to furnish. We do not believe the section quoted from the California law was intended to deprive them of this right. The most that a subsequent appropriator should be permitted to do, it seems to us, would be to use this reserve supply subject to plaintiffs' prior right to use it if and when needed.

At any rate, the California courts not having held to the contrary we now hold that the maintenance of this reserve supply was a beneficial use of the water within the meaning of the quoted section from the laws of California.

Based on available records which go back to 1935, the maximum amounts which the Canal Company might ever need to supply this deficiency are 1,189 acre-feet in April, 1,797 acre-feet in May, and 3,588 acre-feet in June. These amounts it had the right to hold in reserve.

The right to this water has been taken from plaintiffs by defendant by the erection of the Friant Dam. For the reasons stated above and in the case of Gerlach Live Stock Company, supra, we are of opinion it is liable for this taking.

There is no proof in the record from which we can determine the value of the water held in reserve to meet this possible deficiency in the Merced District water. Under the circumstances we think it fair and proper that the case be remanded to the Commissioner for the purpose of taking proof as to its value.

Proof will also be taken on the respective interests in the canal and the water rights on October 20, 1941, of plaintiffs East Side Canal & Irrigation Company and Stevinson Water District. The case is remanded to a Commissioner for this purpose.

Judgment will be suspended until the incoming of the Commissioner's report.