[S. F. No. 9087. In Bank.—January 7, 1920.]

## YOLO WATER AND POWER COMPANY (a Corporation), Appellant, v. FANNIE J. HUDSON et al., Respondents.

[1] Eminent Domain—Evidence—Value of Other Land.—In an action for condemnation of lands for reservoir purposes, the admission of testimony of a witness, over objection, that certain land in the vicinity of the lands involved had a market value of one thousand dollars per acre cannot be said to have resulted in a miscarriage of justice, where the witness testified that the land was similar in location, productivity and fertility to the lands in controversy, but valued the latter lands at but $450 per acre, and the jury valued them at but $160 per acre.

[2] Instructions—When not Attackable.—A party cannot complain of an instruction given at his own request or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one.

[3] Eminent Domain—Market Value—Special Adaptability—Element of Damage—Instruction.—In such action, the plaintiff cannot complain of an instruction given at the request of defendants that the value of the land for any special purpose may be taken into account as one of the elements to show its market value, and if the lands of defendants be specially adapted for reservoir purposes, its value for such use should be considered as one of the elements of value, where the defendant requested the giving of substantially the same instruction.

[4] Id.—Exclusion of Benefits from Reservoir Construction—Instruction.—In such action, an instruction directing the jury to exclude the consideration of benefits, if any, derived by defendants from the construction of the reservoir, was harmless error, where the only benefit was a possible prevention from floods, which rarely occurred and never at a season of the year when the land was so far under cultivation that damage or injury to crops resulted.

[5] Id.—Depreciation from Danger of Seepage and Flood—Element of Damage.—Where land is taken by eminent domain and the manner of its use is such as to naturally and necessarily subject the land not taken to the danger of seepage and flood, a depreciation in the value of such remaining land caused by such danger of seepage and flood is a proper element of damage.

1. Exercise of power of eminent domain for water supply, notes, 58 L. R. A. 241; 22 L. R. A. (N. S.) 156.

Discretion as to necessity of exercise of power of eminent domain for purposes of water supply, note, 58 L. R. A. 249.

[6] ID.—DAMAGE FROM SEEPAGE AND FLOOD—NATURE OF ELEMENTS— INSTRUCTION.—In an action of condemnation for reservoir purposes the jury was not misled to the prejudice of the plaintiff by certain instructions which did not sufficiently impress upon the jury that the only danger from seepage and flood which they could consider was one which was a natural and necessary or reasonable incident to the raising of the water, where by other instructions they were instructed that in assessing damages to the market value of the property not taken they should not consider anything which was remote, imaginary, uncertain, or speculative, but only those elements which were appreciable and substantial.

[7] ID.—INSTRUCTION AS TO DANGER FROM SEEPAGE AND FLOOD— JUSTIFICATION BY EVIDENCE.—In such an action, the defendants were entitled to have the jury instructed to consider the damage resulting from danger of seepage and flood, where the jury spent a day in viewing the lands, and there was evidence concerning the extent of seepage, its physical effect, its effect on the value of the lands affected, of the nature of the soil, and of the contour of the lands.

[8] ID.—CHANGE OF LAND TO MORE PROFITABLE USE—INSTRUCTION. An instruction that the jury were not to be confined to a consideration of the uses of the land at the time of the taking, but the possibility of its change to a more profitable use had it not been taken may be taken into account, was not misleading, where upon a consideration of the instructions as a whole, it appeared that the entire burden of the court's charge on the question of value was that market value was the criterion to follow and that any possible use for which the land might be available or adaptable was to be considered only in arriving at such market value.

[9] ID.—RESPECTIVE VALUES OF LANDS TAKEN AND NOT TAKEN—CONSIDERATION BY JURY—ABSENCE OF DOUBLE ASSESSMENT.—In a condemnation action, the plaintiff cannot complain that double damages were assessed on the theory that the jury was permitted when assessing the value of the lands taken to consider the value of such lands arising from their availability for use in conjunction with the lands not taken, and, on the other hand, when assessing the damage caused by severance to the lands not taken it was permitted to consider the value of such lands arising from their availability for use in conjunction with the lands taken, since the respective values were wholly separate and distinct.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Theodore A. Bell, Arthur C. Huston and W. P. Thomas for Appellant.

H. E. Witherspoon, Ben C. Jones, Preston & Preston and John W. Preston for Respondents.

LENNON, J.—Appellant is a corporation engaged in selling water for purposes of irrigation. It obtains the water which it sells from Clear Lake, in Lake County. Appellant proposed to increase its supply of water by raising the surface of the lake by means of a dam to a height of ten feet above the mean low-water mark. In accomplishing this purpose the various tracts of land adjoining the lake would be flooded to the ten-foot level. This action was accordingly brought for the purpose of condemning and taking in fee the lands below the proposed ten-foot level, these lands being portions of larger tracts belonging to respondents. The jury returned a verdict, finding for appellant and awarding to respondents a sum representing the value of the lands taken and the damages accruing to the remaining lands by reason of the severance. The appeal is based upon alleged errors occurring at the trial and upon the contention that the amounts of the awards are not justified by the evidence.

The court permitted witness Rice to testify over objection that certain land known as the Mendenhall land situated in the vicinity of the lands herein involved had a market value of one thousand dollars per acre. [1] Even if it be conceded that this was error, still it cannot be held to have been prejudicial. Although he stated that the Mendenhall lands were similar in location, productivity, and fertility to the lands in controversy, nevertheless the witness valued the latter lands at but $450 per acre. It can hardly be said with any assurance, therefore, that the ruling affected even the opinion of the witness as to the market value of the property now in suit. Moreover, when it is considered that the value placed by the jury upon the lands condemned was only $160 per acre, it cannot be said that the verdict was influenced by the ruling or that the admission of the testimony resulted in a miscarriage of justice. Complaint is also made because the trial court over objection permitted witness Saylor to testify to the value of a crop of barley raised by him on the land of respondent Riffe. In view of the mass of testimony in

favor of the verdict, the possibility that the evidence so admitted was prejudicial is so remote as to warrant the conclusion that it did not affect the award.

Appellant claims that the trial court erred in instructing the jury at the request of respondents in the following terms: "You are instructed that the value of the land for any special purpose may be taken into account as one of the elements to show its market value, and if these lands of defendants be specially adapted for reservoir purposes, its value for this use should be considered as one of the elements of the market value of the land sought to be condemned." [2] It appears, however, that appellant requested the court to give substantially the same instruction in these words: "Evidence of value for reservoir purposes may be considered as one of the elements tending to show market value." [3] A party cannot complain of an instruction given at his own request or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one. (14 R. C. L. 815, and cases cited.)

Appellant also criticises the instruction of the court directing the jury to exclude the consideration of benefits, if any, derived by respondents from the construction of the reservoir. Conceding the error in the instruction, it was of course harmless if there was no evidence from which the jury might reasonably have found that the lands of respondents would in fact be benefited by the construction of the reservoir. The only benefit which appellant could have desired the jury to consider was the benefit, if any, to be expected from a possible prevention of floods above the ten-foot level. This, of course, could only be considered a benefit in case there was danger of damage by overflow above the ten-foot level under normal or natural conditions. The evidence shows that the lands between the ten and twelve foot levels had very rarely been inundated, and that the result of the overflow was to leave on the land small deposits of rich sediments, the effect of which was to add to the fertility of the soil. There is no evidence indicating that these rare inundations had ever occurred at a season of the year when the land was so far under cultivation that injury or damage to the crops resulted. [4] It is clear, therefore, that the instruction could not, and did not, mislead the jury to the prejudice of appellant.

Appellant also complains of portions of the tenth and twelfth instructions in so far as they declared that the jury were authorized to consider in estimating the injury to the lands not taken the "danger, if any, from underground seepage or from floods likely to be caused by an overflow above the ten-foot level proposed by plaintiff." [5] Where land is taken by eminent domain and the manner of its use is such as to naturally and necessarily subject the land not taken to the danger of seepage and flood, a depreciation in the value of such remaining land caused by such danger of seepage and flood is a proper element of damage. (See, generally, *Colusa etc. R. R. Co.* v. *Leonard,* 176 Cal. 109, [167 Pac. 878].) If, therefore, there was evidence upon which to base such an instruction, respondents were entitled to have the jury instructed to consider the damage resulting from such danger of seepage and flood as they might fairly consider a natural and necessary or reasonable incident to the raising of the water. It is objected, in the first place, that it was not sufficiently impressed upon the jury that the only danger which they could consider was one which was a natural and necessary or reasonable incident to the raising of the water. Torn from their context and viewed alone, it cannot be denied that the instructions in question are open to criticism on the ground stated. But it is to be noted that at the plaintiff's request the trial court instructed the jury as follows: "The court instructs the jury that in assessing the damages to the market value of the property not taken, you should not take into consideration anything as an element of damages, which is remote or imaginary or uncertain or speculative, even though mentioned or testified about by witnesses, but the only element which you should take into consideration as tending to reduce the market value are those which are appreciable and substantial and which will actually lessen the market value of said property." At the request of defendants the court gave this further instruction: "In assessing damages for land taken by eminent domain for the construction of a reservoir, all damages, present and prospective, that are the natural, necessary, or reasonable incidents to the raising of the water on the land of defendants must be assessed in your verdict, and no subsequent recovery for such injuries can be allowed." [6] Considering the charge of the court as a whole, and particularly the instructions quoted,

we are convinced that the language employed in the instructions complained of was not such as to render it probable that the jury was misled to the prejudice of appellant. It is next contended that there was no evidence upon which to base these instructions. There was evidence concerning the extent of seepage at the present level of the lake, concerning the physical effect of such seepage, and concerning its effect on the value of the land affected. There was evidence of the nature of the soil at and above the ten-foot level, at which it was proposed to keep the water. There was also evidence of the contour of the land between the ten and twelve foot levels. Finally, it appears that the jury spent a day in viewing the premises. [7] We think that these items of evidence furnished to the jury all the facts requisite to a fair and rational determination of the question of damage to the lands not taken to be expected to follow naturally and reasonably from the danger of seepage and flood consequent upon keeping the water at the ten-foot level.

By instruction No. 17, given at the request of the respondents, the jury were told that they were not to be "confined to a consideration of the uses of the land at the time of the taking, but the possibility of its change to a more profitable use had it not been taken may be taken into account." Viewed apart from its context, the instruction may appear open to two criticisms; first, that it permitted the jury to place upon the property a special value for a peculiar purpose, and, second, that it permitted the jury to enter the field of speculative conjecture. [8] Considering the instructions as a whole, however, we find that the entire burden of the court's charge on the question of value was that "market value" was the criterion for the jury to follow, and that any possible use for which the land in question might be available and adaptable was to be considered only in arriving at such "market value." This was a correct statement of the law. (*City of Santa Ana* v. *Harlin,* 99 Cal. 538, [34 Pac. 224].) While it may be said that the court ought to have restated the criterion of value to be applied in connection with instruction No. 17, we are of the opinion that its failure to do so did not have the effect of misleading the jury to the prejudice of appellant. Again, viewing the instruction apart from its context, the use of the word "possibility" suggests that the jury may have been led to consider purely specula-

tive and conjectural values. But, considered in the light of all of the instructions given by the court, the instruction could, we think, have conveyed no other meaning to the jury than that they were not confined to a consideration of the uses of the land at the time of the taking, but that the "substantial and appreciable" possibility of its change to a more profitable use had it not been taken might be taken into account, but that in so doing they were not to consider "remote," "speculative," "imaginary," "uncertain," or "conjectural" possibilities. It would have been highly commendable for the court to have repeated the caution against considering remote and conjectural possibilities of use in connection with the instruction complained of, but its failure to do so did not constitute reversible error.

Appellant claims that double damages were assessed against it for the reason that the jury was permitted when assessing the value of the lands taken to consider the value of such lands arising from their availability for use in conjunction with the lands not taken, and, on the other hand, when assessing the damage caused by severance to the lands not taken it was permitted to consider the value of such lands arising from their availability for use in conjunction with the lands taken. Appellant's argument in this behalf is based upon the obvious fallacy that the value of the lands taken resulting from the possibility of their use with the lands not taken is identical with the value of the lands not taken resulting from the possibility of their use with the lands taken. [9] These respective values are, however, wholly separate and independent, and appellant was not subjected to double damages by reason of the fact that the jury was allowed to consider each of these values as separate and distinct from the other. Appellant's complaint on this score is unique and original. So far as we are aware a similar contention has never before been urged in a court of last resort.

It is also claimed that the damages were excessive. The jury fixed the value of the lands and improvements proposed to be taken at the sum of $160 per acre and fixed the severance damages to the lands not taken at fifty dollars per acre in the case of two of the tracts of land and at one hundred dollars per acre in the case of the remaining tracts. Respondents' witnesses estimated that the land was worth from three hundred dollars to five hundred dollars per acre and

that by reason of the severance the value of the land not taken would be reduced to from ten dollars to twenty dollars per acre. Appellant's witnesses estimated that the land was worth from forty dollars to one hundred dollars per acre. The knowledge of values shown to be possessed by respondents' witnesses compared favorably, to say the least, with that shown to be possessed by appellant's witnesses. Upon this state of the record it is clearly impossible to hold that the award of damages by the jury involves an excessive estimate of the value of the lands proposed to be taken and of the depreciation of the value of those not to be taken as a result of the severance.

The judgment is affirmed.

Melvin, J., Shaw, J., Olney, J., Lawlor, J., Wilbur, J., and Angellotti, C. J., concurred.