265 P.2d 661

**MUSSER et ux.  v.  SWIFT & CO.**

No. 7982.

Supreme Court of Idaho.

Jan. 12, 1954.

Rehearing Denied Feb. 2, 1954.

Ryan & Ryan, Weiser, for appellant.

**2**

D. L. Carter, Weiser, for respondents.

THOMAS, Justice.

Plaintiffs, hereinafter referred to as respondents, and defendant, hereinafter referred to as appellant, entered into a "Poultry Raising Agreement". Under the terms of this agreement appellant was to deliver 4,000 poults to respondents and from time to time deliver to them necessary feed to be used for fitting and preparing the turkeys for market. Upon delivery of the poults and from time to time upon delivery of the feed by appellant to respondents, both of which were to be financed by appellant, a charge against respondents' bailment account was to be and was set up.

Respondents were obligated to furnish all equipment to properly house, feed and otherwise care for such turkeys until they were ready for market at which time, but not later than November 15, 1951, respondents were to redeliver them to defendant.

At the time of the redelivery of these turkeys to appellant they were to be and were sold at the then market value, and from the sale price all sums charged to the bailment account for the poults and for the feed supplied were to be deducted; from the resulting net, respondents were entitled to 70% as compensation under the agreement.

Respondents contend that appellant failed and refused to comply with the terms and conditions of the agreement with respect to supplying necessary feed for the proper development of the turkeys, and that by reason of such failure 365 poults died due to improper diet to the damage of respondents in the sum of $250; that, furthermore, because of failure of appellant to furnish a proper and adequate supply of finishing pellets and concentrates 640 tom turkeys which were marketed prematurely at 30¢ per pound weighed on an average of 3 pounds per turkey less than they would have if they had had proper and adequate feed, all to the damage to respondents in the sum of $576; that likewise 942 tom turkeys which were sold at 32¢ a pound were for the same reason under weight on an average of 3 pounds per turkey, thereby damaging respondents in the sum of $904.32; that, finally, the 1,662 hen turkeys, sold at 39¢ a pound, averaged 2 pounds less per turkey than they would have averaged had they been supplied with proper and adequate feed, thus damaging respondents in the sum of $1,276.36.

Upon issues joined the matter was tried before a jury which returned a verdict for respondents in the sum of $2,311. From the judgment entered upon the verdict, this appeal was taken.

Appellant makes several assignments of error all of which are directed to the proposition that the evidence is insufficient to support the verdict in the sum of $2,311 or in any sum or at all.

Appellant predicates error on the sole ground that respondents failed to prove the loss of any anticipated profits from the venture for the reason they failed to prove what additional costs would be involved to supply the additional necessary feed.

While the evidence is not wholly without conflict, an examination of the record reveals there is testimony to the effect that it would have required 8 tons of finishing pellets to properly mature the turkeys; that 3 tons were supplied late in October at $6.05 per hundred; that had the additional 5 tons of finishing feed been supplied, the tom turkeys at the time of marketing would have weighed on an average of 3 additional pounds each and the hen turkeys an additional 2 pounds each; hence there is evidence as to the additional amount of feed which was required to properly mature the turkeys and also there is evidence as to what it would have cost.

The evidence will sustain a gross loss of profits in the sale of 640 tom turkeys in the sum of $576 on the basis of an increase of 3 pounds of weight per turkey at 30¢ per pound; it will sustain a verdict of a gross loss of profits on 942 tom turkeys in the sum of $904.32 on the basis of an increase in weight of 3 pounds each at 32¢ a pound; also it will sustain a verdict of a gross loss of profits of $1,296.36 on 1,662 hen turkeys on the basis of an increase in weight of 2 pounds per hen at 39¢ per pound, aggregating a gross loss of profits of $2,776.68. From this sum there should be deducted the cost of 5 additional tons of finishing feed at $6.05 a hundred which would be $605. Taking this additional cost from the gross loss would result in a net loss of $2,171.68. Under the agreement respondents were entitled to only 70% of the profits, hence their loss through the failure of appellant to supply such feed would be 70% of $2,171.68 or $1,520.18.

It follows that the cause should be and is remanded with instructions to the trial court to grant appellant a new trial unless respondents within 30 days after the filing of the remittitur, remit from said judgment all in excess of $1,520.18. However, in the event the remission is made, the trial court is directed to enter judgment for respondents for $1,520.18 and costs taxed in the court below. Walling v. McMillan Sheep Co., 40 Idaho 513, 234 P. 152; Goodell v. Pope-Shenon Mining Co., 36 Idaho 427, 212 P. 342; Watkins v. Mountain Home Co-op. Irr. Co., 33 Idaho

**4**

623, 197 P. 247; Adamson v. Mattson, 32 Idaho 493, 185 P. 553; Olson v. Idora Hill Mining Co., 28 Idaho 504, 155 P. 291; see also 5 C.J.S., Appeal and Error, §§ 1859–1862, pp. 1342–1348.

Costs to appellant.

PORTER, C. J., TAYLOR and KEETON, JJ., and BAKER, District Judge, concur.