[Civ. No. 26504. Second Dist., Div. Two. Apr. 26, 1963.]

CITY OF DOWNEY, Plaintiff and Appellant, v. EDWARD L. ROYAL et al., Defendants and Respondents.

Royal M. Sorensen, City Attorney, Burke, Williams & Sorensen for Plaintiff and Appellant.

R. D. Sweeney and Cameron W. Cecil for Defendants and Respondents.

HERNDON, J.—Plaintiff, the City of Downey, appeals from the judgment entered following a nonjury trial of its action brought to condemn a portion of respondents' lands for street purposes.

The land owned by respondents prior to the commencement of this action was a narrow, rectangular parcel approximately 1,300 feet in length and 166 feet in width. Abutting the property on the south side was the right-of-way of the Southern Pacific Railroad which ran the 1.300-foot length of the parcel. The east end abutted on Woodruff Avenue. In 1957, respondents Edward L. and Doris I. Royal had transferred the westerly 915 feet of this property to respondent Holm-Royal, Inc., of which Edward L. Royal is president. The remaining easterly portion is still owned by respondents Royal in their individual capacities.

Prior to the commencement of this action, the northerly 36 feet of the property was subject to a sewer easement and a gas distribution easement, which effectively prevented the construction of buildings or other structures on the surface. In addition, at the time of the division of the property among the individual and corporate respondents, mutual right-of-way easements had been exchanged covering the northerly 30 feet of the property. These surface easements and the underground easements did not exactly overlap, but together they covered the northerly 40 feet of the property which appellant city sought to condemn in this action.[1]

The reciprocal right-of-way easements held by respondents provided that they were for the benefit of the parties and their tenants and "shall not be used by the general public. . . ." A portion of this right-of-way area was then paved with asphalt concrete and there were rolled gutters extending westerly from Woodruff Avenue to a dead end at the furthest point on the property transferred to the corporate respondent which had been improved by the erection of buildings. A sign was placed upon the entrance to this right-of-way on Woodruff Avenue that listed the names of the tenants and stated: "Private Road Permission To Pass Over Revocable at any Time, Holm Royal Inc. and E. L. Royal

[1] A very small separate piece of ground also was taken, but was not separately considered by the court in its judgment, and hence need not be so considered for purposes of this appeal.

Owner.'' In addition, the right-of-way was closed off by chains for a 24-hour period, annually.

By a resolution of the city council, it was determined that the city would acquire the northerly 40 feet of the property (together with equal footage to be taken from property owned by another party and abutting the subject property on the north) and construct thereon a street running over approximately the same area as that covered by the above described easements, but continuing on beyond the existing dead end of the right-of-way and through the balance of respondents' property and other property adjoining it on the west until connection was made with then existing streets. The only issue raised on this appeal relates to the determination of the fair market value of the property interests taken.

Appellant city does not actually question the reasonableness of the valuation made by the trial court if it be assumed that the opinions of the witnesses who testified for respondents properly could be considered. Appellant contends, however, that under the factual circumstances above set forth, it should have been held *as a matter of law* that no more than a nominal value could be ascribed to respondents' land. In other words, appellant urges that in view of the fact that the land being condemned is subject to underground utility easements and reciprocal surface right-of-way easements (considering the individual and corporate owners as separate and distinct legal entities) it has no market value as a matter of law, and therefore the owners should be entitled only to nominal damages plus the costs of the improvements placed thereon, i.e., the surfacing of the private rights-of-way.

In support of this proposition, appellant cites a number of decisions only one of which is even arguably authority therefor. All of the others deal with condemnation of railroad easements or streets which, in effect, previously had been dedicated to the public. Further, the very statement of the proposition is premised upon assumption that the land being taken could only be used, and was only being used, by its owners exclusively for street purposes. Such assumption is directly contrary to all the evidence in the record. It was shown that the surface use of this *cul de sac* strip of property was more comparable to a driveway owned in common by the individual and corporate respondents than to a public road. The evidence is essentially undisputed that the highest and best use of the property, for purposes of determining its fair

market value, was the use which then was actually being made of it, and that this use was twofold, i.e., as a means of providing ingress and egress to the remainder of respondents' land and as a parking area for the owners and their tenants. Prior to the public taking, the property had been used as a lot on which cars were parked two or three abreast and large trucks were parked until space at loading docks became available.

■ "Ordinarily, the market value of land which is taken in eminent domain . . . is the measure of damage for the condemnation thereof, and in estimating the market value, any and all purposes to which the land may lawfully and reasonably be adapted shall be considered. When land taken in eminent domain is reasonably suitable and may be legally used for purposes which would enhance its value, that fact should be taken into account in estimating the market value of the tract. [Citations.] ■ The apparent fact that there is no market value of land, in a strict sense, does not entitle plaintiff to take lands without paying just compensation. [Citation.]'' (*People* v. *Jones,* 67 Cal.App.2d 531, 537 [155 P.2d 71].)

■ "[T]he measure of compensation for property taken is its market value, which is to be determined by a consideration of all the uses to which it is adapted and for which it is available. [Citations.] ■ In this connection, the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that the prospect of such use affects the market value of the land; . . .'' (*People* v. *Ocean Shore Railroad, Inc.,* 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179].)

■ It is apparent from appellant's argument herein that it is starting from the premise that it was improper to evaluate the strip of land in question in relation to the remainder of respondents' lands and that the test is what price a willing buyer, having no interest in any contiguous or abutting land, would pay for an isolated strip 40 feet wide and over 1,000 feet in length and upon which it would not be permissible to place any permanent structures in view of the surface and underground easements owned by other parties. Thus, appellant argues that the fact the property was valuable to its owners as a parking lot and as a turning area, when considered in conjunction with their other property,

may not be considered, because the damages resulting to the other property through loss of the parking area constitute severance damage and respondents conceded that they did not seek severance damages.

 This line of argument was fully answered by our Supreme Court in *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48, 54 [186 P. 772], as follows: ''Appellant claims that double damages were assessed against it for the reason that the jury was permitted *when assessing the value of the lands taken to consider the value of such lands arising from their availability for use in conjunction with the lands not taken,* and, on the other hand, *when assessing the damage caused by severance to the lands not taken it was permitted to consider the value of such lands arising from their availability for use in conjunction with the lands taken.* Appellant's argument in this behalf is based upon the obvious fallacy that the value of the lands taken resulting from the possibility of their use with the lands not taken is identical with the value of the lands not taken resulting from the possibility of their use with the lands taken. *These respective values are, however, wholly separate and independent, and appellant was not subjected to double damages by reason of the fact that the jury was allowed to consider each of these values as separate and distinct from the other.* Appellant's complaint on this score is unique and original. So far as we are aware a similar contention has never before been urged in a court of last resort.'' (Italics added.) The reasoning of the last quoted decision is sound and does not conflict with the rule that market value is not necessarily the same as the value of the property to its owner.

 The one case cited by appellant that might appear to lend some possible support to its position is *People* ex rel. *Dept. of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925 [268 P.2d 117]. However, in the terse statement of facts given by the court in this decision at page 928, it is simply stated: ''The front 30 feet of the 96-foot strip sought to be condemned was impressed with an easement for the purpose of *a road,* which easement existed when the Schultz Company acquired the land. There were reciprocal 30-foot easements in favor of the Schultz property over the property on both sides of it, these contiguous 30-foot strips forming *a side road* parallel to the existing highway, and used by the abutting landowners.'' Further, '' [t]he evidence showed that the front 10 feet of the 30-foot strip that was impressed with an easement for

*road purposes,* was also impressed with an easement in favor of the Pacific Telephone and Telegraph Company for the purpose of maintaining an underground cable." (Italics added.)

It is clear from the facts thus stated in the *Schultz* case that the "road" easement, to which the property there involved was subject, was in the nature of what might at least be regarded as a *"quasi-public"* right-of-way, and no showing was made that Schultz ever used it for other than road purposes or had any right so to use it. Since the burden is on the condemnee to show the value of property being taken from him, it was there held proper to instruct the jury that only nominal damages could be awarded for the taking of this 30 feet of the condemned land.

In the instant case, respondents made ample showing that even considering them as separate and distinct entities, nonetheless their property taken had substantial value when used for the combined purposes of supplying means of ingress and egress and parking facilities for the operations being conducted upon their remaining lands. ██ There also was evidence that appellant's completion of the street (which had been completed at the time this cause was tried) had resulted in limiting the duration of the single car parking allowed at the curbs and that no parking whatsoever was permitted during certain of the business hours maintained by respondents' tenants. Furthermore, the installation of curbing had materially affected the previously existing rights of respondents as abutting landowners to enter upon their remaining property at any point. As the result of these circumstances, it became necessary for respondents to devote portions of their remaining property to parking purposes which otherwise could have been devoted to use in the construction of additional buildings. However, respondents did not seek severance damages for these losses, perhaps feeling that the benefits provided by the through street offset any detriment suffered. But such failure inured only to appellant's benefit, and obviously constitutes no ground upon which to urge a reversal of the award made for the value of the land taken.

██ Appellant's appraiser testified that the value of the property taken from respondents Royals as individuals was $3,227, consisting of $1.00 for the land and $3,226 for the improvements (curbs, gutters, and street paving) and that the value of respondent corporation's land was $4,660, consisting of $1.00 for the land and $4,659 for the improvements.

Respondents' appraiser gave $11,000 and $28,000, respectively, as the values of the properties taken without distinguishing between the land and the improvements. Mr. Royal, as owner of one parcel and as president of the corporate owner of the other, gave his opinion of their fair market value as $15,-394.26 and $37,380, respectively.

The trial court found that the values were $7,652.50 and $15,643.80, respectively. In the face of the conflicting evidence, this determination was a factual one properly in the province of the trial court and according to long-settled principles may not be disturbed upon appeal.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.