493 P.2d 387

The STATE of Idaho ex rel. R. Doyle
SYMMS et al., Plaintiff-Appellant,

v.

CITY OF MOUNTAIN HOME, a municipal
corporation of the State of Idaho,
Defendant-Respondent.

No. 10765.

Supreme Court of Idaho.

Feb. 2, 1972.

Faber F. Tway, Chief Legal Counsel, Idaho Dept. of Highways, and Anton Hohler, Boise, for plaintiff-appellant.

Martin V. Huff, Mountain Home, for defendant-respondent.

DONALDSON, Justice.

This eminent domain proceeding was brought by the State of Idaho to condemn land owned by the City of Mountain Home which is required for an interstate highway (80N) project. Judgment was entered granting condemnation and awarding damages.

The property taken (about 14 acres) was part of a larger tract of land (255.44 acres) which was purchased by the city in 1963 for $36,000 and which was to be developed and used for recreational purposes, including an eighteen-hole golf course, a trap shoot, a fishing and skating pond, a park, trailer parking, an archery range, and hiking areas. A portion of this acreage was leased by the city to the Mountain Home Municipal Development Corporation; this portion was bisected by a drainage ditch, a "physical barrier" of "considerable size," on one side of which a nine-hole golf course was located. Aside from the leased land, the remainder of the city's property, part of which was appropriated in this action, was undeveloped and unused, except for a small building used in connection with trap shooting and a water system used by the city, which consisted of three wells and a water tank.

After the highway project is completed, bisecting the 255.44 acres, the city will still have approximately 75 acres between the golf course and the highway and about 100 acres on the other side of the highway. In order to better develop the remaining property, the city requested that the state provide access between the divided parcels by including an underpass in its plans. This was not done, and at trial the city maintained that because such direct access was lacking, development of the remaining parcels to their best use as a unified recrea-tional area (including an additional nine holes for the existing golf course) became impossible.

Witnesses for both sides recognized that after the taking, special *benefits* would accrue to the remaining land—in the amount of $36,000 according to the city's witness, but in the amount of $50,000 according to the state's. The jury disagreed with both figures and found that special benefits to the remainder actually amounted to only $27,000. The verdict rendered by the jury provided for a total recovery of $48,000 ($10,500 for the land actually taken, plus $64,500 for damage to the land remaining, minus $27,000 for special benefits to the land remaining). The state appeals from the judgment entered upon this verdict and from the order denying its motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.

The state contends that the trial court erred in admitting the following evidence: (1) testimony offered by the city concerning the cost of constructing an additional nine holes appurtenant to the existing nine-hole golf course; and (2) certain exhibits offered by the city to show that the city had studied various proposed plans and had determined that the subject property was adaptable to recreational uses. The challenged evidence relates to the valuation of the land actually taken (not to the computation of severance damages to the land remaining after the taking).

█ The compensation which must be paid for property taken by eminent domain does not necessarily depend upon the uses to which it is devoted at the time of the taking; rather, all the uses for which the property is suitable should be considered in determining market value. Idaho-Western Ry. v. Columbia Conference of Evangelical Lutheran Augustana Synod, 20 Idaho 568, 119 P. 60 (1911); Portneuf-Marsh Valley Irrigation Co. v. Portneuf Irrigation Co., 19 Idaho 483, 114 P. 19 (1911); Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); 4 Nichols on

Eminent Domain § 12.314 (rev. 3d ed. 1971). The highest and best use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as a measure of value, but to the full extent that the prospect of demand for such use affects the market value of the property. Olson v. United States, *supra*; 4 Nichols, *supra* at § 12.314; cf. City of Caldwell v. Roark, 92 Idaho 99, 437 P.2d 615 (1968). It must be shown that the use for which the property is claimed to be adaptable is reasonably probable. Olson v. United States, *supra* 292 U.S. at 257, 54 S.Ct. 704. Furthermore, in order to establish adaptability, the owner must prove the economic feasibility of the suggested use. People v. Ocean Shore R. R., 32 Cal.2d 406, 196 P.2d 570, 583, 6 A.L.R.2d 1179 (Cal.1948); People ex rel. Dept of Pub. Works v. Flintkote Co., 264 Cal.App.2d 97, 70 Cal.Rptr. 27, 30 (1968); 4 Nichols, *supra* at § 12.314. If, as a matter of fact, the parcel taken is part of a larger tract held by the same owner, it is error to consider such parcel as if it constituted an entire tract separate and apart from other property in the possession of the same owner; the amount awarded for the land taken must reflect any enhanced value arising from its availability for use in conjunction with the land not taken. Yolo Water & Power Co. v. Hudson, 182 Cal. 48, 186 P. 772, 775 (1920); City of Downey v. Royal, 215 Cal.App.2d 523, 30 Cal. Rptr. 159, 162 (1963); In re Lehigh Valley R. Co. of New Jersey, 78 N.J.Law 699, 76 A. 1067 (1910); 4A Nichols, *supra* at § 14.1[3]; cf. Olson v. United States, *supra* 292 U.S. at 256, 54 S.Ct. 704.

**■■** Applying the above principles to this case, we conclude that the evidence challenged by the state was admissible. The testimony concerning the cost of constructing an additional nine holes for the existing golf course was relevant to show economic feasibility and, therefore, was admissible to prove that the land taken was adaptable for use as part of an eighteen-hole golf course, nine holes of which were already in existence. The exhibits objected to by the state were admissible to prove that the property taken was adaptable for recreational purposes, including an eighteen-hole golf course. United States v. Coronado Beach Co., 255 U.S. 472, 488, 41 S. Ct. 378, 65 L.Ed. 736 (1921); Board of County Com'rs v. Vail Associates, Ltd., 171 Colo. 381, 468 P.2d 842 (1970); 5 Nichols, *supra* at § 18.11[2]; Annot., 26 A.L.R.3d 780, 789–792 (1969); Annot., 9 A.L.R.2d 1044 (1950) (see cases cited in Later Case Service, 1971 ed., at 378–380). Furthermore, these exhibits tended to show that the use of the property for such purposes was reasonably probable and, therefore, were admissible for that reason also. State v. 7.026 Acres, 466 P.2d 364 (Alaska 1970). The jury was instructed (in Instruction No. 23) to consider the owners particular plans for development and use of the property only for the purpose of determining adaptability. Hence, we conclude that this evidence was properly admitted and considered by the jury.

The state further contends that the city is not entitled to severance damages for injury resulting to that portion of the land occupied by the existing golf course (hereinafter referred to as the "golf course land"); at trial, the jury was allowed to consider evidence of such damages in determining the total amount of damages which would accrue to the land remaining after the taking, by reason of its severance from the land taken. The state argues that the amount awarded could not properly be based upon severance damages to the golf course land (1) because there was no unity of use between the land taken and the golf course land, (2) because there was no unity of ownership, and (3) because these parcels were not contiguous.

**■** The assessment of damages in an eminent domain action is governed by Section 7–711 of the Idaho Code, which in pertinent part provides that the court or

jury must ascertain and assess damages in the following manner:

"2. If the property sought to be condemned constitutes only *a part of a larger parcel*, [the court or jury must assess] the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." Emphasis supplied.

The question raised by the state is, in essence, whether the 255 acres owned by the city (and including the golf course land) may properly be considered a "larger parcel," only a part of which is sought to be condemned, within the meaning of I.C. § 7–711. "Parcel," as used in this section, means a consolidated body of land. Big Lost River Irrigation Co. v. Davidson, 21 Idaho 160, 171–172, 121 P. 88 (1912). Ordinarily, the question whether two pieces of land constitute a single parcel is a practical one for the jury, which should consider evidence on the use and appearance of the land, its legal divisions, and the intent of its owner. 4A Nichols, *supra* at § 14.31; *cf.* Annot., 6 A.L.R.2d 1197, 1207 (1949).

 In the present case, if it is assumed that the jury's award of severance damages included compensation for damages to the golf course land, then the jury must have found that the land taken and the golf course land are parts of a single parcel, the severance of which will result in damages to the golf course land. Such a finding is not without support in the record. Both the land taken and the golf course land were part of a tract purchased by the city for development and use for recreational purposes. Although the golf course land was leased to the Municipal Development Corporation for a period of five years, the city was still the owner of the leased property; and severance damages are allowable even though the quantity and quality of the title or estate in the parts severed differ. State *ex rel.* Symms v. Nelson Sand and Gravel, Inc., 93 Idaho 574, 581, 468 P.2d 306 (1970). Although the city's tract was crossed by a drainage ditch (a physical barrier of considerable size), substantial evidence was introduced to show the feasibility of joint use of the land on both sides of the ditch; in addition, the jury viewed the property and was therefore in a better position than are we to determine the importance of this allegedly divisive barrier. The fact that the land taken is not currently being used for a golf course does not mean that the land taken and the remaining land do not constitute parts of a "larger parcel," within the meaning of I.C. § 7–711. Under a statute such as ours, it is not the identity of uses of the condemned and remaining land which is determinative; what is significant is the dependency of the value of the remaining land upon its use in conjunction with the condemned land. State ex rel. Morrison v. Jay Six Cattle, 88 Ariz. 97, 353 P.2d 185, 191–192 (1960); *cf.* Valley Paper Co. v. Holyoke Housing Authority, 346 Mass. 561, 194 N.E.2d 700 (1963). In the case at bar, there was considerable testimony at the trial to demonstrate that the value of the golf course land (part of the remaining land) was dependent upon the availability of land upon which could be constructed an additional nine holes, part of which land was taken for the proposed highway. Hence, we conclude that the jury could have properly awarded severance damages for the diminution in value of the land upon which the existing golf course was situate, which land was part of a larger parcel, a part of which was condemned, and which damages would result from its severance and the construction of the proposed highway.

 The state's final contention is that since the jury's award of $27,000 in special benefits (to the land remaining after the taking) is less than the lowest estimate of special benefits introduced at the trial (which was $36,000—according to the testimony of the city's own witness), the

district court should have granted the state's motion to allow special benefits in the amount of the lowest testimony adduced at trial. The rules of law relating to civil actions, new trial, and appeals are applicable to eminent domain proceedings. *See* I.C. § 7–719; *cf.* Idaho Const. Art. I, § 14. When a jury verdict is excessive, this Court may require a remittitur as a condition of affirmance. Musser v. Swift & Co., 75 Idaho 1, 265 P.2d 661 (1954). Therefore, when a verdict rendered in an eminent domain proceeding is excessive, in the sense that it is not supported by competent evidence, such a conditional affirmance is appropriate. *Accord*, State ex rel. State Highway Comm'n v. Atchison, T., & S. F. Ry., 76 N.M. 587, 417 P.2d 68 (1966) (verdict rendered was outside the range of evidence of damages introduced at trial); State Highway Comm'n v. Bloom, 77 S.D. 452, 93 N.W.2d 572, 77 A.L.R.2d 533 (1958). *See also* 27 Am.Jur. Eminent Domain § 472 (1966); 30 C.J.S. Eminent Domain § 367 (1965). There is no evidence in the record of this case to support a determination of less than $36,000 in special benefits to the land remaining after the condemnation. Since the jury found special benefits in the amount of only $27,000, it follows that the verdict rendered was excessive in the amount of $9,000.

This case is, therefore, remanded with instructions to the trial court to grant the state a new trial unless the city files, within 30 days after the filing of the remittitur, its election to accept a $9,000 reduction of the jury verdict of $48,000. If the city files this election, the trial court shall enter judgment in favor of the city for $39,000, less the sum of $2,200 previously deposited by the state, or a net sum of $36,800, together with costs taxed in the court below.

Costs to appellant.

McQUADE, C. J., McFADDEN and SHEPARD, JJ., and SCOGGIN, D. J., concur.