IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40168

STATE OF IDAHO, DEPARTMENT OF
TRANSPORTATION,

    Plaintiff-Respondent-Cross Appellant,

v.

HJ GRATHOL, a California general
partnership,

    Defendant-Appellant-Cross
    Respondent,

and

STERLING SAVINGS BANK, a Washington
corporation, and DOES 1 through 5,

    Defendants.

Boise, November 2014 Term

2015 Opinion No. 17

Filed: February 11, 2015

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Charles W. Hosack, Senior District Judge

District court decision in eminent domain case, _affirmed_ in part, _vacated_ in part, and _remanded._

Ramsden & Lyons, Coeur d'Alene, for appellant/cross-respondent. Douglas S. Marfice argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, and Holland & Hart, Boise, for respondent-cross appellant. Mary V. York argued.

---

BURDICK, Chief Justice

HJ Grathol ("Grathol") appeals the Kootenai County district court's judgment awarding Grathol $675,000 in just compensation from the Idaho Transportation Department ("ITD"). This eminent domain case arose when ITD acted to condemn 16.314 acres to improve U.S. Highway 95 ("U.S. 95"). Those 16.314 acres were part of 56.8 acres that Grathol owned in Athol, Idaho.

1

After a bench trial, the district court held that just compensation would be based on the value of the 56.8 acre parcel. The court also held the property remaining after the condemnation suffered no severance damages. Grathol argues on appeal that the district court applied the wrong law and should have instead based just compensation on a 30 acre parcel. Grathol also argues that the district court ignored Grathol's severance damage evidence and improperly excluded testimony about damages from a proposed frontage road.

Grathol also appeals the district court's award of costs and discretionary fees to ITD, arguing that condemnors are not entitled to costs and that the court did not find ITD's discretionary costs were necessary and exceptional. ITD cross-appeals, arguing that the district court erred when it did not award ITD reasonable attorney fees under *Ada County Highway District v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983). We affirm the district court's judgment, vacate the court's denial of attorney fees, affirm the court's award of costs, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Grathol purchased a 56.8 acre parcel in Kootenai County on May 28, 2008, for $1,450,000. Grathol is a California general partnership that develops commercial real estate projects for profit. Two days after Grathol purchased the property, it submitted a rezone application to change the property's zoning from rural to commercial. In November 2008, Kootenai County granted Grathol's request and rezoned the entire 56.8 acres to commercial.

ITD filed a complaint on November 19, 2010, to condemn a 16.314-acre portion (hereinafter "the 16 acres") of Grathol's property. Those 16 acres were in the western portion of Grathol's 56.8 acres. ITD needed to condemn those 16 acres as part of its plan to improve U.S. 95 from a two-lane to a four-lane highway between Garwood and Sagle in north Idaho.

Grathol's 56.8 acre parcel was located at the northeast corner of U.S. 95 and Highway 54, near Athol. The property was bare and undeveloped land, except for an old building on a .4-acre square on the southwest corner. That .4-acre square's northeastern corner touched the southwest corner of the other 56.4 acres. The property is bounded by U.S. 95 on the west, Highway 54 on the south, and Howard Road on the east. After the U.S. 95 project is done, part of Grathol's 56.8 acres will still have frontage on the former U.S. 95. The remaining property will be adjacent to a new interchange with Highway 54.

2

ITD moved for possession of the 16 acres on December 21, 2010. Grathol opposed, arguing that ITD's complaint did not offer a value for ITD's planned extension of a frontage road, named Sylvan Road, through Grathol's property. ITD responded that it was not constructing an extension of Sylvan Road on Grathol's property and was not planning to condemn Grathol's property for that purpose. At a January 2011 hearing, the district court held that the taking was necessary, complied with the statutory requirements, and did not include an extension of Sylvan Road across Grathol's property. Also, the court held that ITD had offered fair market value for the taking plus an additional 10%, but Grathol had refused the offer. The court later entered an order granting ITD possession of the real property in exchange for depositing $571,000 with the court towards just compensation. The court entered a Rule 54(b) certificate, and Grathol appealed that order to the Idaho Supreme Court in *Department of Transportation v. HJ Grathol (Grathol I)*, 153 Idaho 87, 278 P.3d 957 (2012). The Court affirmed the district court's order in June 2012.

On January 6, 2012, ITD filed a motion in limine and a motion for summary judgment in the district court. In the motion in limine, ITD argued that the opinions of Grathol's valuation experts failed to meet admissibility standards. In the motion for summary judgment, ITD sought to dismiss Grathol's seven just compensation claims. One of those claims was for the taking of land for Sylvan Road. The other six claims were for items of special damages claimed as severance damages. These special damages were: (1) construction delay; (2) loss of visibility; (3) loss of access; (4) loss of profits; (5) loss of the value of an alleged gravel deposit; and (6) loss due to adverse impacts on Grathol's development plan.

The district court heard ITD's motions on February 2, 2012. During the hearing, Grathol's counsel conceded the claims for construction delay, lost profits, and loss of a gravel deposit. The court commented that Grathol's expert disclosures did not disclose any opinions (1) about the remaining property's fair market value before and after the taking or (2) the amount of damages Grathol sought as special damages claimed as severance damages.

The next day the district court entered separate orders for each motion. For the motion in limine, the court required Grathol to provide a supplemental expert witness disclosure with opinions that included the basis of a fair market value for the remainder property before and after the taking. The court ordered that these disclosures include the nature and amount of special damage items as severance damages. The court then granted ITD's motion for summary

3

judgment in part, dismissing the three conceded special damage claims and the alleged Sylvan Road taking damage claim. The court denied ITD's summary judgment motion for Grathol's severance damage claims based upon the project's other alleged adverse impacts.

On February 10, 2012, Grathol filed its supplemental expert disclosure with opinions from two of its experts, Dewitt Sherwood and Alan Johnson. However, that disclosure did not include opinions about the specific amounts for the special damages Grathol claimed as severance damages. At a February 2012 hearing, Grathol's counsel conceded that Grathol did not seek money damages on its remaining claims for loss of visibility, loss of access, and adverse impact on the proposed development. Grathol asserted that any loss was incorporated into the fair market value difference in the property. Grathol limited its severance damage claims to the disclosed opinions that calculated the amount of damages based on the difference between the fair market value for the remainder before and after the taking.

Several days later, the court decided ITD's motion in limine. The court prohibited any testimony about severance damage amounts for any specific adverse impact and dismissed Grathol's damage claims for any special damage items claimed as severance damages. This left only Grathol's severance damage claims that were based on the difference in the remainder's fair market value before and after the taking. However, the court allowed Grathol's fact testimony on the loss of visibility, access, and development as evidence relevant to expert opinions on severance damages based on the difference in the remainder's fair market value.

The court held a five-day trial that began March 5, 2012. Four expert witnesses testified about the property's value. Sherwood testified as an expert appraiser for Grathol. His testimony and appraisal report were based on the value of a 30-acre parcel. He used 30 acres because he could not find any comparable commercial developments that needed more than 30 acres. His report also indicated that the remaining 26 acres might be used for self-storage, residential, or light-industrial. Grathol's other value witness was Alan Johnson, Grathol's Vice President and part owner. Johnson based his value for the property taken on a 30-acre parcel as well. He testified that he valued the western 30 acres at $3.23 per square foot and the eastern 26 acres at $1 per square foot. However, he based his value for severance damages on a 40-acre remainder parcel. He also stated that he believed the 30 acres had a value before the taking of $4 per square foot. He summarized his valuation in an exhibit presented at trial.

4

During Johnson's testimony, he was asked whether the proposed frontage road named Sylvan Road would impact his opinion of the remainder's value or use. ITD objected, arguing that it was impermissible testimony because ITD had not alleged it was building Sylvan Road as part of the case. ITD also argued that Johnson was not testifying to a discrete value so he was testifying to a decrease in value not reflected in his value figures. The court allowed Johnson to answer, but only with a yes or no. Johnson answered "yes."

ITD used appraiser Stan Moe as its first value witness. Moe determined the larger parcel was 56.39 acres and did not include the .4-acre parcel. Larry Pynes was ITD's second appraiser. Pynes based his analysis on the whole 56.8 acres and testified the value of the partial taking was $675,000. After trial, the parties submitted post-trial briefing on the larger parcel issue and the valuation methodology issue. Neither of ITD's experts testified that the property suffered severance damages.

The district court awarded Grathol $675,000 in just compensation based upon a larger parcel of all 56.8 acres. The court found that the preponderance of the evidence favored finding the larger parcel was 56.8 acres, not the 30-acre parcel Sherwood and Johnson testified to. The court found this based on the historical unity of title, use, and contiguity as well as the evidence of future commercial use because the property was currently all zoned as commercial. The court found no persuasive evidence that an owner would divide the 56.8 acres for anything other than commercial or retail use.

The district court then held there were zero severance damages because Grathol's evidence of a fair market value decrease after ITD's taking was unpersuasive. The court noted that Sherwood found the remainder's after value was $1,344,457, but Sherwood's testimony was unpersuasive because of his indirect and confusing testimony. The court's problems with his testimony included that he was inconsistent as to the size of the remainder, never referred to severance damages in his report, and never did the math on the severance damages in his report. The court emphasized that Sherwood did not clarify his damage amounts at trial, but instead testified that the value of the remainder parcel was $2.25 a foot both before and after the taking and expressly stated that there was "zero severance" when asked if there was severance damage.

The district court also found Johnson's severance damage conclusions unpersuasive because they were contradictory, confusing, and based on a 30-acre parcel. Johnson's valuation after the taking was contingent on Grathol's development being complete, and he never called

his damages severance damages. Thus, the court found that Grathol did not establish a decrease in the remainder's fair market value after the taking.

ITD then requested attorney fees based upon the *Acarrequi* factors.[1] At an August 2012 hearing, the district court made its decision on attorney fees and costs from the bench. The court began by determining which statute provided for attorney fees. The court found Idaho Code section 12-117 applied as the exclusive source of awarding fees to a state entity. The court then found ITD could not recover fees because Grathol acted with a reasonable basis in fact or law. Next, the district court stated that costs could be awarded to condemnors outright as the prevailing party. The court found ITD was the prevailing party under the *Acarrequi* factors and awarded costs as a matter of right. The court also awarded ITD its discretionary costs for Pynes. Thus, the district court awarded ITD $24,298.56 in costs. Grathol timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court erred in holding that Grathol's 56.8 acre parcel is the larger parcel.
2. Whether the district court erred when it found Grathol's remaining property suffered no severance damages.
3. Whether the district court erred in excluding testimony concerning Sylvan Road.
4. Whether the district court erred in its attorney fees and costs award.
5. Whether ITD is entitled to attorney fees on appeal.

## III. ANALYSIS

**A. Substantial and competent evidence supports the district court's holding that 56.8 acres was the larger parcel.**

---

[1] The *Acarrequi* factors include:

(1) whether a condemnor reasonably made a timely offer of settlement of at least 90 percent of the ultimate jury verdict;

(2) whether the offer was timely and not made "on the courthouse steps an hour prior to trial";

(3) whether the offer was made within a reasonable period after the action was instituted;

(4) whether the condemnee contested the allegations of public use and necessity;

(5) the outcome of any hearing on such a challenge;

(6) whether the condemnor made any modifications in the project's plan or designs resulting from the landowner's challenge; and

(7) whether the condemnee voluntarily granted possession of the property pending resolution of the just compensation issue.

*State ex rel. Smith v. Jardine*, 130 Idaho 318, 320, 940 P.2d 1137, 1139 (1997).

Grathol owns a 56.8-acre parcel and ITD is taking 16 acres of that parcel. The district court valued the 16 acres that ITD condemned as part of a 56.8-acre parcel. Grathol contends that the district court should have considered the 16 acres as part of the western 30 acres, and not as part of all 56.8 acres. The parties disagree about how much land to value because of the premise that a smaller parcel appraises for a higher value than a larger parcel.

When the government condemns only part of a larger piece of land, it is a partial takings case. *See State ex rel. Symms v. City of Mountain Home*, 94 Idaho 528, 531, 493 P.2d 387, 390 (1972). The parties do not dispute that this is a partial takings case. In a partial takings case, courts use a "larger parcel" analysis to determine the portion of property to value. *Id.* at 532, 493 P.2d at 391. This Court has stated: "If, as a matter of fact, the parcel taken is part of a larger tract held by the same owner, it is error to consider such parcel as if it constituted an entire tract separate and apart from other property in the possession of the same owner." *Id.* at 531, 493 P.2d at 390. A court determines what property is included in the larger parcel by assessing three elements: (1) unity of title, (2) contiguity, and (3) unity of use. *State ex rel. Symms v. Nelson Sand & Gravel, Inc.*, 93 Idaho 574, 581, 468 P.2d 306, 313 (1970). The landowner bears the burden of proving these three unities because he bears the burden of proving just compensation. *See Rocky Mountain Power v. Jensen*, 154 Idaho 549, 555, 300 P.3d 1037, 1043 (2012).

The amount of property that is included in the larger parcel is a question of fact using the three larger parcel elements of unity of use, unity of title, and contiguity. *See, e.g.*, *City of Mountain Home*, 94 Idaho at 532, 493 P.2d at 391 (holding a jury properly concluded that a 14-acre taking was part of a 255.44-acre larger parcel when the City owned all the land and all 255.44 acres were to be developed for recreational uses, despite a drainage ditch that left part of the property separated from the rest of the land); *State ex rel. Rich v. Fonburg*, 80 Idaho 269, 277, 328 P.2d 60, 64 (1958) (holding that farm property owned by a single owner was not all part of the larger parcel when another person owned land between the parcels and the two parcels were separated by a railroad track); *Nelson Sand & Gravel, Inc.*, 93 Idaho at 581, 493 P.2d at 313 (holding that two tracts of land separated by a roadway composed a larger parcel that allowed a severance damages award because the two tracts were used as a single unit). In other words, the specific facts of each case establishing unity of ownership, contiguity, and unity of use are the focus of the analysis. This Court has emphasized the importance of unity of use, stating that when "it is clear that there is unity of use between two tracts, a slight separation of

7

the tracts generally will not preclude an award of severance damages." *Nelson Sand & Gravel, Inc.*, 93 Idaho at 579, 468 P.2d at 311.

Grathol argues that the district court applied the wrong law and ignored legal authority that a larger parcel could encompass less than the entire 56.8 acres. Grathol contends that the court's legal error "led to an avalanche of erroneous factual finding." Grathol articulates this legal error as the district court erroneously believing the land taken always has to be valued as part of the landowner's entire property.

Grathol is wrong. The district court did not reject Grathol's legal argument that a larger parcel could be less than an entire property. The court rejected Grathol's theory based upon the facts. The district court found by a preponderance of the evidence that the larger parcel was the entire 56.8 acres because of the history of the unity of title, contiguity, and use, and because the evidence of common future use of commercial development showed the property was one integral unit. While the district court stated that it thought Grathol's theory was not recognized in Idaho law and was contrary to Idaho law, the district court held the larger parcel was 56.8 acres after assuming a 30-acre larger parcel was permitted. The court factually analyzed unity of use and found unity of use existed because Grathol and all previous owners had used the 56.8 acres as an integral unit. Further, the property was currently all zoned as commercial. Thus, the district court determined the larger parcel was the entire 56.8 acres based upon the facts, not upon an erroneous legal premise.

The question is therefore whether the 56.8-acre larger parcel is supported by substantial and competent evidence. We review the district court's decision to determine whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 521, 20 P.3d 702, 705 (2001). On appeal, we liberally construe a district court's findings of fact in a bench trial in favor of the judgment entered, in view of the district court's role as trier of fact. *Id.* The district court, as trier of fact, weighs conflicting evidence and testimony and judges witness credibility. *Id.* We will not substitute our view of the facts for the district court's view. *Id.* Where the district court bases its findings of fact on substantial evidence, even if the evidence is conflicting, we do not overturn those findings on appeal. *Id.* Neither party disputes unity of title or contiguity, so the issue on appeal is whether substantial and competent evidence supports the district court's finding that all 56.8 acres of Grathol's property had unity of use.

Substantial and competent evidence supports the district court's finding that the property had unity of use. At the time of the taking, Grathol had obtained zoning of the entire property as commercial. In fact, Grathol applied to the county to rezone all the property from rural to commercial just two days after it purchased the property. The property had previously been undeveloped and zoned as rural, except for a .4-acre square on the corner that was zoned commercial and had a small building on it. All testimony indicated that commercial development was the property's highest and best use in the future. ITD's two appraisers testified that the entire property's highest and best use was commercial development. Johnson, Grathol's Vice President, testified that Grathol developed its properties commercially and would do so in the future. While Sherwood, one of Grathol's appraisers, reported that the eastern 26.8 acres might have a different use as self-storage, residential, or light-industrial, Sherwood did not support that statement with any plans. Also, Grathol did not provide evidence that it wanted a partial rezone. This evidence supports the district court's holding that the use was uniformly commercial.

Grathol argues the district court erred by basing its decision on only the property's zoning as commercial development. Grathol argues that commercial development is not a "use" and evidence showed that the western 30 acres would be used differently as an independent economic unit and would be developed in a different phase. Grathol contends that the district court decided to discount Sherwood's analysis that 30 acres was the larger parcel.

The court stated that Grathol only wanted to separate 30 of the 56.8 acres as the larger parcel based on Sherwood's opinion that the western acreage was a location more suitable for a proposed commercial development. The court concluded that

> Sherwood's opinion that a proposed 30 acre development could be built on the 56.8 acres, and, if there were no freeway, the development would have been located on the westerly 30 acres, is both credible and logical. But assigning a higher value to the 30 acres does not change the fact that the preponderance of the evidence establishes that the larger parcel on this record is the entire 56.8 acre parent tract. Sherwood's methodology of creating a larger parcel based on its value to a proposed future commercial development is factually unpersuasive when considered in light of all the other evidence in the record.

Indeed, the record has little support for a 30-acre larger parcel. Sherwood stated that commercial property owners usually use only 30 acres, but this idea is contradicted by the fact that Grathol purchased 56 acres and had it all zoned commercial. It is also contradicted by one of Sherwood's cited comparable sales of 235 acres, which included Cabela's use of 40 acres. Other than Sherwood's testimony that he discussed the 30-acre designation with a few other brokers in his

9

office, he provided no concrete evidence that 30 acres is common or an industry standard. While one witness testified that it was possible for the 30-acre development's water treatment system to be located entirely on the 30 acres, another testified that the development needed a portion of the eastern 26 acres for the water treatment system. Grathol's site plans also show use beyond 30 acres, specifically a travel plaza in the eastern 26 acres. Thus, the district court could have found the evidence did not indicate that Grathol's actual plan would fit on just 30 acres.

Finally, Grathol seems to indicate that the 30-acre parcel's "different use" will be an additional commercial development that takes place at a different time. This difference would be the equivalent to the difference between a Wal-Mart built first on the 30 acres, and a restaurant and hotel built later on the remaining 26 acres. Nothing about that difference suggests a real divide in the property's highest and best use, only a difference in the business that occupies the space and when the development takes place. Thus, the record contradicts Grathol's claim that no evidence supported the conclusion that all 56.8 acres would have uniform use. Instead, zoning designations and testimony that the highest and best use was commercial are substantial evidence that supports the district court's finding that the larger parcel was 56.8 acres.

Grathol relies heavily on *City of Phoenix v. Wilson*, 21 P.3d 388 (Ariz. 2001). In *Wilson*, the city condemned 1.4 acres of a landowner's 23.24-acre parcel. 21 P.3d at 390. At the time, all 23.24 acres were zoned low-density residential development. *Id.* However, the city's general plan classified the area as one that should be developed as high-density residential use. *Id.* The landowner's appraiser testified that this classification meant rezoning was very likely and therefore 5 of the 23 acres had a different highest and best use. *Id.* After a trial, the jury adopted this appraiser's value. *Id.* at 391. The Arizona Court of Appeals reversed the jury's verdict, holding that the property taken should have been valued only as a discrete, separate unit or as a part of the entire parcel, but not as part of a hypothetical unit less than the entire parcel. *Id.* The Arizona Supreme Court vacated the Arizona Court of Appeals' opinion and affirmed the trial court, concluding that once a jury decided that those 5 acres could have a different use, then that 5-acre parcel could be the larger parcel valued for the landowner's just compensation. *Id.* at 394. The Arizona Supreme Court explained: "when the evidence provides an adequate foundation by common sense and market data showing different highest and best uses, we see no reason why it is improper to consider a large tract of property as if, in the before condition, it were divisible into separate hypothetical entities." *Id.*

Here, *Wilson* is distinguishable because Grathol's evidence does not provide any foundation for different highest and best uses. Unlike the appraiser in *Wilson* who testified about a probable zone change that would give part of the parcel a different highest and best use, here it was undisputed that the highest and best use of Grathol's entire property was commercial development. The district court observed this difference and commented, "Even if *Wilson* were controlling authority, it does not resolve this case, where the larger hypothetical parcel is based upon a theory that it has a higher value than the rest of the ground within the parent tract which is outside the hypothetical parcel." Indeed, Grathol's argument that part of its property had a different use from the rest of the property was just speculation. Grathol had no factual basis for this claim. Thus, the district court properly rejected Grathol's 30-acre larger parcel theory based on the court's factual analysis. Because the district court's finding that the larger parcel was 56.8 acres is based upon substantial and competent evidence, we affirm the district court's decision to that end.

## B. Substantial and competent evidence supports the district court's holding that Grathol's remaining property suffered zero severance damages.

In addition to valuing the property taken, courts must value the remaining property's severance damages when the remainder has decreased in value due to the taking. 29A *C.J.S. Eminent Domain* § 145 (2014). The remainder is the property left in the "larger parcel" after the property taken is removed. Severance damages are "the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." I.C. § 7-711. Severance damages are recoverable under Idaho Code section 7-711, but are limited to damages caused "by reason of [the remaining parcel's] severance from the portion sought to be condemned." *Id.* In other words, severance damages are damages caused because of the taking. *See Pac. Nw. Pipeline Corp. v. Waller*, 80 Idaho 105, 109, 326 P.2d 388, 391 (1958).

Severance damages are determined by calculating the difference between the remainder's fair market value before the taking and the remainder's fair market value after the taking. *State ex rel. Rich v. Dunclick, Inc.*, 77 Idaho 45, 56, 286 P.2d 1112, 1118 (1955). Fair market value is the amount a willing buyer and a willing seller would agree on. *Ada Cnty. Highway Dist. v. Magwire*, 104 Idaho 656, 659, 662 P.2d 237, 240 (1983). To determine fair market value, courts should consider all elements that an owner or a prospective purchaser could reasonably find affect the land's fair market price. *State ex rel. Rich v. Halverson*, 86 Idaho 242, 248, 384 P.2d

11

480, 483 (1963). Grathol agreed that severance damages were to be based upon opinion testimony about differences in the fair market value of the remainder before and after the taking.

The district court held that Grathol had zero severance damages because Grathol's evidence of a decrease in fair market value after ITD's taking was unpersuasive. The court noted that Sherwood valued the remainder's before value at $2,940,300 and the after value at $1,344,457. However, the court found this value testimony unpersuasive because it was based on a 30-acre larger parcel and identified three different remainder acreages. Indeed, Sherwood used a 30-acre larger parcel, which left Sherwood's remainder at least 27 acres smaller than the district court's remainder size. The court also emphasized that Sherwood testified that the remainder parcel's value was $2.25 per square foot both before and after the taking and expressly stated there was "zero severance" when asked if there was severance damage. The district court also found Johnson's severance damage conclusions contradictory and "based upon an unexplained and mysterious methodology incorporating an assumed completion of Grathol's proposed development." The court noted that Johnson also relied on a 30-acre larger parcel, not a 56.8 larger parcel. Thus, the court found that Grathol did not persuasively establish a decrease in the remainder's fair market value after the taking.

Grathol argues the district court erred because it should have considered testimony from Geoffrey Reeslund and George Hedley that showed cost increases for future development. Reeslund is the Vice President of the company that owns Grathol, and he is an architect that designs potential commercial site plans. He testified that a utility connection to the western-most remainder would cost $1 million after the taking. Hedley was ITD's rebuttal expert. He is a southern California developer who worked with ITD's expert consultants on calculating the project's costs of development and feasibility. Hedley analyzed the cost to develop the property both before and after the taking. Hedley testified that before the taking, development would cost $7,103,000, or $4.92 per square foot. Hedley then testified that the development costs after the taking would be $6,021,000, or $6.92 per square foot. Grathol argues that this unopposed testimony of a $2 per square foot cost increase shows severance damages of $3,527,140.32.

The court did not mention Reeslund or Hedley's testimony, but that is understandable given that neither of them linked their testimony about costs to the project's fair market value. Reeslund was not designated as a valuation expert, and he did not give evidence about the property's value after the taking. Indeed, at trial the court indicated that without a specific dollar

range for value, Reeslund's testimony was not very probative. Similarly, Hedley's development cost per acre was not testimony of a decrease in fair market value. None of Hedley's testimony articulated the property's fair market value after the taking. Therefore, despite the idea that increased costs cause a decrease in fair market value, neither witness gave an opinion on how much these costs would reduce the fair market value or what severance damages would result. Increased costs do not necessarily mean that the fair market value has decreased.

Further, substantial and competent evidence supports the district court's finding of no severance damages. Sherwood stated that the remainder parcel's value was $2.25 per square foot both before and after the taking. He also expressly stated there was "zero severance" when asked if there was severance damage. The court noted it was "extremely impressed" that Sherwood never actually testified to any severance damage value because at the motion in limine hearing, Grathol's counsel stated that Sherwood would provide those numbers. Sherwood also never referred to severance damages in his report, but instead gave a range of values for "difference rounded." The district court noted that by taking the "difference rounded" number, the court could calculate severance damages, but "the report does not contain those numbers, much less label these figures as 'severance damages,' and Sherwood did not proffer these numbers in his trial testimony." In fact, the court stated that Sherwood "carefully avoided stating that he has computed a difference between the fair market value of his remainder before and after the take." Further, ITD's experts both testified that the property did not suffer any severance damages. The court noted that Pynes's testimony was the most persuasive and had valued the remainder the same before and after the taking. Neither Sherwood nor Johnson coherently or credibly linked their testimony to fair market value for the district court. Further, Reeslund and Hedley's increased costs testimony was not linked to fair market value. Because of this lack of fair market value testimony, the court could not consider Grathol's claimed evidence of increased costs. Thus, we hold substantial and competent evidence supports the district court's finding of no severance damages.

**C. The district court did not abuse its discretion when it excluded testimony about Sylvan Road.**

During Johnson's testimony, Grathol's attorney asked him whether the proposed frontage road named Sylvan Road would impact his opinion of the remainder's value or use. ITD objected, arguing that this was impermissible testimony because ITD had not alleged it was building Sylvan Road as part of the case. ITD also argued that Johnson was not testifying to a

discrete value so he was testifying to a value decrease not reflected in his value figures. The court allowed Johnson to answer, but only with a yes or no. The district court therefore limited Johnson's response to simply affirming that he thought that road would have an impact on value.

Grathol argues the district court erred in disallowing Johnson's testimony about Sylvan Road because the court expanded its summary judgment ruling that struck Grathol's claim for damages based on a taking of Sylvan Road. When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). The appellant must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right. *Id.*

The district court held more than once that ITD was not taking land for Sylvan Road on Grathol's property. When the court held a hearing on ITD's motion for order granting possession, the court stated that it found ITD was not condemning any land for Sylvan Road. The district court then granted ITD's motion for possession and issued an order of condemnation, which this Court affirmed in *Department of Transportation v. HJ Grathol (Grathol I)*, 153 Idaho 87, 93, 278 P.3d 957, 963 (2012). In *Grathol I*, Grathol argued that the condemnation order was invalid as it did not clearly describe the property rights acquired. 153 Idaho at 91, 278 P.3d at 961. Grathol contended the description was not clear because ITD's condemnation order contained an express declaration that ITD was extending Sylvan Road through Grathol's parcel while the complaint did not address Sylvan Road. *Id.* This Court found the complaint and condemnation order did not express any intent to condemn Grathol's land for Sylvan Road. *Id.* at 92, 278 P.3d at 962. We further reasoned:

> If Sylvan Road is extended to Roberts Road through Grathol's property in the future, then, at that time, the Board will be required to determine the just compensation due for that portion of Grathol's property that is necessary for the project. At this time, this Court refuses to engage in such speculative contemplation.

*Id.* In addition, the district court also granted ITD's motion for summary judgment on Grathol's claim for a Sylvan Road taking and damages for that alleged taking. Thus, the district court repeatedly held Grathol could not claim ITD was taking Sylvan Road and could not claim damages based on that taking.

Grathol argues that Johnson's testimony about Sylvan Road would have provided credible support for his severance damage opinions. However, any testimony about the value impact of a speculative, future road would be irrelevant because the district court found there

14

was no evidence of a taking, this Court in *Grathol I* held that there was no evidence ITD claimed such a taking, and the district court granted ITD summary judgment on Grathol's claim that there were damages from such a taking. Thus, the district court did not err by excluding Johnson's additional testimony about an alleged impact from Sylvan Road.

In addition, the district court allowed Johnson to testify that Sylvan Road impacted the property's use and his valuation opinion. While he was not allowed to say how the road impacted his opinion, Johnson's severance damage figures were not expressly based on Sylvan Road. Johnson was able to testify about his opinion of the before and after value of the remainder of the Grathol property, including severance damages. The district court found his testimony unpersuasive because it was confusing and not supported by market data or evidence. Given that Johnson testified about his values for severance damages and the district court did not find them persuasive, as well as the fact the district court repeatedly found ITD was not taking property for Sylvan Road, we find the district court did not err in limiting Johnson's testimony.

**D. The district court erred in its attorney fees award, but properly awarded costs.**

In eminent domain actions, the award of attorney fees is within the trial court's sound discretion. *Ada Cty. Highway Dist. v. Acarrequi*, 105 Idaho 873, 877, 673 P.2d 1067, 1071 (1983). This Court therefore considers "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Telford Lands LLC v. Cain*, 154 Idaho 981, 992, 303 P.3d 1237, 1248 (2013) (quoting *Rockefeller v. Grabow*, 139 Idaho 538, 545, 82 P.3d 450, 457 (2003)).

We have adopted the view that attorney fees may be awarded to the condemnee without a finding that the action was brought and pursued frivolously, unreasonably, or without foundation. *Acarrequi*, 105 Idaho at 876–77, 673 P.2d 1070–71. In *Acarrequi*, this Court delineated factors to guide courts in determining whether to award attorney fees. *Id.* at 877–78, 673 P.2d at 1071–72. The Court noted that these factors "are matters for consideration and not rigid guidelines within which a trial court is required to operate." *Id.* at 877, 673 P.2d at 1071. In addition to considering the *Acarrequi* factors, the trial court must apply I.R.C.P. 54(d)(1)(B) to determine the prevailing party. *State ex rel. Ohman v. Ivan H. Talbot Family Trust*, 120 Idaho 825, 829, 820 P.2d 695, 699 (1991). Rule 54(d)(1)(B)'s provisions only apply to the extent that

15

they are not in conflict with the *Acarrequi* factors. *State ex rel. Smith v. Jardine*, 130 Idaho 318, 321, 940 P.2d 1137, 1140 (1997).

In the district court, ITD requested attorney fees based only on the *Acarrequi* factors. The district court instead applied Idaho Code section 12-117 and denied ITD's request for attorney fees. The court found section 12-117 applied as the exclusive source of awarding fees to a state entity. The court then held it did not need to reach the *Acarrequi* factors and the prevailing party analysis because Grathol acted with a reasonable basis in fact or law under section 12-117. As to costs, the district court stated it could award costs to condemnors as the prevailing party. The court found ITD was the prevailing party under the *Acarrequi* factors and I.R.C.P. 54(d)(1)(B) and awarded costs as a matter of right. The court also awarded ITD its discretionary costs for Pynes, ITD's appraiser. Thus, the district court awarded ITD $24,298.56 in costs.

Grathol argues the district court cannot award attorney fees or costs to ITD because an award to a condemnor would unconstitutionally reduce the landowner's award merely because the landowner puts the government to its proof. Grathol argues there is no authority anywhere for such an award. ITD cross-appeals the district court's denial of its attorney fees request, arguing both costs *and* attorney fees can be awarded to a condemnor. ITD argues that the court mistakenly applied Idaho Code section 12-117 to attorney fees, but correctly awarded costs using the *Acarrequi* factors.

Grathol's appeal and ITD's cross appeal will be addressed together. The first issue is what statute the court should have used for the award of attorney fees. Idaho Code section 12-117 allows attorney fees to the prevailing party "in any proceeding involving as adverse parties a state agency or a political subdivision and a person. . . ." In August 2012, the district court decided to apply Idaho Code section 12-117 based upon this Court's precedent that section 12-117 was the exclusive source of awarding attorney fees to state agencies. In March 2013, this Court held that "section 12-117(1) is not the exclusive basis upon which to seek an award of attorney fees against a state agency or political subdivision, but attorney fees may be awarded under any other statute that expressly applies to a state agency or political subdivision, such as sections 12-120(3) and 12-121." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 67, 305 P.3d 499, 511 (2013). Thus, we no longer hold that section 12-117 is the exclusive basis for state agencies to seek attorney fees.

16

The standard for awarding attorney fees on other claims in a lawsuit differs from the standard for awarding attorney fees on a condemnation claim. *Telford Lands*, 154 Idaho at 992, 303 P.3d at 1248. Idaho Code section 12-121 applies to condemnation actions. *Id.* ITD requested fees under the *Acarrequi* factors, and thus under section 12-121.[2] Because ITD requested fees under section 12-121 and not 12-117, and section 12-121 applies to this case, the district court abused its discretion by applying section 12-117.

The issue then becomes to whom courts can award attorney fees in condemnation actions. ITD contends that *Acarrequi* can apply to attorney fees for both the condemnee and the condemnor. Grathol contends that attorney fees cannot be awarded to a condemnor. Despite never awarding fees to a condemnor, we have left open that possibility. We stated in *Acarrequi*: "Except in the most extreme and unlikely situation, we cannot envision an award of attorneys' fees and costs to a condemnor." 105 Idaho at 878, 673 P.2d at 1072. In subsequent decisions, this Court did not limit or withdraw that statement. *See Jardine*, 130 Idaho at 321, 940 P.2d at 1140. Indeed, we reassert that courts can award attorney fees to a condemnor in extreme and unlikely situations.

The issue is then how a district court determines when a case is extreme and unlikely. ITD proposes that to be an extreme and unlikely case, the condemnor must have met and far exceeded all of the *Acarrequi* factors that applied to the condemnor, the condemnor must have advocated a reasonable position, and the condemnee must have pursued or defended the case unreasonably.

We adopt a test similar to ITD's proposal. First, the condemnor must have met all of *Acarrequi* factors that applied to the condemnor. Second, the condemnor's case must have been brought reasonably, not frivolously, and have adequate foundation. Finally, the condemnee must meet the standard in section 12-121. Fees can be awarded under section 12-121 only when the court "finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). When a district court decides in its discretion that a case meets all three of these elements, the condemnor recovers its attorney fees.

---

[2] Grathol argues that ITD did not request attorney fees under section 12-121. Indeed, at the attorney fee hearing ITD's counsel stated that "[ITD] is not seeking attorneys' fees and costs under Idaho Code 12-121, as suggested by Grathol, but rather under the particularized rules for costs and attorney's fees that is – that applies to condemnation cases." ITD went on to articulate the *Acarrequi* factors, which makes it apparent that ITD was requesting fees on this basis. Thus, ITD properly requested attorney fees.

ITD argues that this is an extreme and unlikely case.[3] However, the determination of whether the case is extreme and unlikely is within the district court's discretion. Indeed, the district court's finding under section 12-117 that Grathol's claims were reasonably based in law and fact may indicate that the district court will not hold the case was brought frivolously, unreasonably, or without foundation.[4] However, the district court makes that factual finding, not this Court. Also, apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation. *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632, 329 P.3d 1072, 1080 (2014). Accordingly, we vacate the district court's denial of ITD's attorney fees based on section 12-117 and remand for the district court to analyze attorney fees within the parameters we have outlined.

As to costs, the district court awarded costs to ITD. The court interpreted Idaho Code section 7-718's language to allow costs as a matter of right to the prevailing party who meets the *Acarrequi* factors without any additional findings. The court determined ITD was the prevailing party and followed section 7-718 to award costs with an analysis of the *Acarrequi* factors. The district court did not consider whether Grathol acted with a reasonable basis in law or fact. The district court also awarded ITD its discretionary costs for Pynes, one of ITD's appraisers. Grathol argues that the district court erred in awarding costs to ITD as a matter of right because the court had already determined the case had a reasonable basis in law and fact under section 12-117.

As this opinion has already articulated, ITD is correct that it can be awarded costs as the condemnor and that section 12-117's requirement for a reasonable basis in law or fact does not apply. Idaho Code section 7-718 provides: "Costs may be allowed or not, and, if allowed, may be apportioned between the parties on the same or adverse sides in the discretion of the court." This plain language provides for the awarding of court costs, not attorney fees. *Telford Lands*, 154 Idaho at 992, 303 P.3d at 1248. However, this Court has indicated that costs cannot be awarded using only the *Acarrequi* factors. In *Acarrequi*, this Court specified that "in the most extreme and

---

[3] ITD exhaustively lists conduct it believes rises to "extreme." ITD's list included its belief that Grathol used improper appraisal methods, claimed damages barred by law, constantly changed the rationale of its demands, refused to provide expert disclosures, and provided expert opinions that had no foundation and were unexplainable.

[4] The district court found that Grathol did not act without a reasonable basis in fact or law because Grathol's larger parcel legal argument was "novel and creative and certainly pushing the envelope," but not unreasonable. The court then noted that while the facts for highest and best use were vague and Grathol's witnesses offered very little input on fair market value, just because the facts were unpersuasive did not mean they were unreasonable. The court also found that Grathol's severance damage arguments were not unreasonable because they had some basis before Johnson testified at trial that there were zero severance damages.

unlikely situation" a court could award "attorney fees *and* costs" to a condemnor. 105 Idaho at 878, 673 P.2d at 1072 (emphasis added). However, we overrule *Acarrequi*'s implication that the extreme and unlikely situation applies to costs because the plain language of section 7-718 indicates that costs can be awarded to either party within the district court's discretion. Thus, we hold the district court properly awarded costs to ITD as a matter of right.

In addition, Grathol argues the district court erred in awarding discretionary costs to ITD because the court did not make an express finding that Pynes's testimony was necessary or exceptional. A trial court has discretion to "award a prevailing party certain costs where there has been 'a showing that the costs are necessary and exceptional, reasonably incurred, and should in the interests of justice be assessed against the adverse party.'" *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 314, 109 P.3d 161, 168 (2005) (quoting I.R.C.P. 54(d)(1)(D)). A trial court must make express findings as to why a party's discretionary costs should or should not be allowed. I.R.C.P. 54(d)(1)(D). Express findings comply with this requirement when they are about the general character of the requested costs and whether those costs are necessary, reasonable, exceptional, and in the interests of justice. *Hayden Lake Fire Prot. Dist.*, 141 Idaho at 314, 109 P.3d at 168. This Court has construed the "exceptional" cost requirement to include those costs incurred because the nature of the case was itself exceptional. *Id.*

Here, Pynes was one of ITD's two valuation experts. While ITD had requested many discretionary costs, the district court only awarded discretionary costs for Pynes. The court stated that it found Pynes very helpful in sorting out issues that seemed "incomprehensible" to the court. The court commented that the court needed Pynes's straightforward testimony and "an awful lot of stuff here made [Pynes] necessary." In addition, the court found Pynes's testimony "extremely helpful because of the exceptional nature of this particular case." The court supported that finding with an explanation about why this case was exceptional. Thus, the court provided express findings that the costs for Pynes were necessary and exceptional. Thus, we hold the district court did not abuse its discretion in awarding discretionary costs for Pynes. We affirm the district court's award of costs.

**E. ITD is entitled to attorney fees on appeal.**

ITD argues it is entitled to attorney fees on appeal under Idaho Code section 7-718, and alternatively under sections 12-117 and 12-121. ITD argues that Grathol's appeal lacks a basis in law and fact, similar to the abuses ITD detailed at the district court level. ITD claims these

19

abuses include Grathol claiming the district court applied the improper larger parcel law, misrepresenting the record and testimony, and trying to recover damages based on Sylvan Road.

ITD's request for attorney fees under Idaho Code section 7-718 fails because that statute applies only to costs. *Telford Lands*, 154 Idaho at 992, 303 P.3d at 1248. However, ITD requests fees under section 12-121 also. Because this is an appeal of a final condemnation order, section 12-121 and the *Acarrequi* factors are the proper standard. *Id.* As articulated above, fees are only awarded to a condemnor in an extreme and unlikely case.

The first element of an extreme and unlikely case is that the condemnor must be the prevailing party and have met the *Acarrequi* factors. In *Acarrequi*, this Court delineated factors to guide courts in determining the prevailing party and whether to award attorney fees. 105 Idaho at 877–78, 673 P.2d at 1071–72. The court applies those factors and I.R.C.P. 54(d)(1)(B)'s prevailing party analysis. *State ex rel. Ohman v. Ivan H. Talbot Family Trust*, 120 Idaho 825, 829, 820 P.2d 695, 699 (1991). Rule 54(d)(1)(B)'s provisions only apply to the extent that they are not in conflict with the *Acarrequi* factors. *Jardine*, 130 Idaho at 321, 940 P.2d at 1140. Here, the district court found ITD met the *Acarrequi* factors, and Grathol does not argue that ITD failed to meet those factors. Thus, we similarly hold ITD met these factors.

We then consider who is the prevailing party on appeal. "In determining the prevailing party, the court examines the final result obtained in relation to the relief sought, whether there were multiple claims or issues, and the extent to which either party prevailed on each separate issue or claim." *First State Bank of Eldorado v. Rowe*, 142 Idaho 608, 615, 130 P.3d 1146, 1153 (2006). This Court has stated that, in considering all of the claims involved in an action, a court examines the prevailing party question "from an overall view, not a claim-by-claim analysis." *Crump v. Bromley*, 148 Idaho 172, 174, 219 P.3d 1188, 1190 (2009) (quoting *Shore v. Peterson*, 146 Idaho 903, 914, 204 P.3d 1114, 1125 (2009)). ITD prevailed on the larger parcel issue, the severance damage issue, the Sylvan Road evidentiary issue, and the cost issue. ITD prevailed on its cross-appeal of the district court's denial of attorney fees. ITD clearly prevailed overall in the appeal. Because ITD met the *Acarrequi* factors and was the prevailing party, ITD has established the first element of an extreme and unlikely case.

The second element of an extreme and unlikely case is that ITD's claims must be reasonable. Here, ITD's argument that substantial and competent evidence supported the district court's judgment was reasonable. ITD also reasonably argued that the district court properly

20

limited testimony on Sylvan Road's impact on severance damages. ITD reasonably argued that the district court improperly decided fees could be awarded only under Idaho Code section 12-117. Thus, ITD's claims on appeal were reasonable and meet the second element of an extreme and unlikely case.

The third element of an extreme and unlikely case is that Grathol's claims must allow an attorney fee award under Idaho Code section 12-121's standard. That section "permits a court to apportion and award reasonable attorney fees for claims that are brought or defended unreasonably, frivolously, or without adequate foundation in fact or law." *Baird-Sallaz v. Sallaz*, 157 Idaho 342, 347, 336 P.3d 275, 280 (2014) (citing *Idaho Military Historical Soc'y v. Maslen*, 156 Idaho 624, 632–33, 329 P.3d 1072, 1080–81 (2014)). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012).

We find that Grathol's appeal was unreasonable. First, Grathol's arguments about the district court's ruling on the larger parcel were false and misleading, did not show the district court incorrectly applied well-established Idaho law, and did not show that the facts of this case warranted any extension of Idaho law. Grathol argued that the district court ignored the idea that the larger parcel could be 30 acres.[5] However, the district court expressly stated that it considered Grathol's evidence and argument that the parcel could be 30 acres and instead found the preponderance of the evidence showed a 56.8 acre parcel. Hence, Grathol's argument about the larger parcel legal standard is completely irrelevant. The district court completely analyzed the facts of the case when explaining its decision. Grathol also argued on appeal that there was no evidence the property had unity of use, which was contrary to all evidence apart from its appraiser's confusing and non-credible testimony. Grathol's arguments about witness testimony simply asked this Court to re-weigh the evidence and second guess the trial court. Thus, Grathol's arguments about the larger parcel are unreasonable.

Similarly, Grathol's arguments about severance damages only ask the Court to re-weigh the evidence. Grathol's own appraiser testified that the property suffered zero severance damages, which the district court found credible. ITD's appraisers also testified that Grathol

---

[5] Grathol went as far to allege at oral argument before this Court that the district court preordained its decision before finally admitting that perhaps instead the court simply minimized the importance of evidence.

21

suffered zero severance damages. Grathol argued on appeal that the district court ignored Reeslund and Hedley's testimony about cost increases. The district court did not address this testimony. But that testimony was not linked to fair market value, and Grathol gave no reason why this testimony would outweigh three appraisers that testified there were no severance damages. Therefore, again Grathol asked this Court to re-weigh the evidence, which makes its severance damage claims unreasonable.

Finally, Grathol's argument that the district court should have allowed testimony about Sylvan Road is completely unreasonable and frivolous. The district court repeatedly dismissed claims that ITD was taking Sylvan Road and any damages associated with that taking. However, Grathol continually tried to work that claim into the case. Even after this Court held in *Grathol I* that the condemnation order and complaint did not indicate ITD was taking land for Sylvan Road, Grathol tried to admit testimony that Sylvan Road impacted the property's value overall. Grathol then argued in its reply brief that ITD's project made Sylvan Road a foregone conclusion. Grathol argued this without any evidence at all. Again, the district court already decided that Sylvan Road was not a foregone conclusion and was not part of this condemnation. Grathol was completely unreasonable to argue this yet again without any evidence at all. There was no evidence that ITD was taking Sylvan Road, and therefore Grathol had no reason to continue its attempts to link that road to damages and argue about that linkage on appeal. Thus, Grathol failed to show the district court incorrectly applied well-established law, which makes its appeal unreasonable.

As to attorney fees, Grathol argued that fees and costs cannot be awarded to a condemnor despite this Court stating the contrary in *Acarrequi*. Grathol also argued in its July 2013 reply brief that the Court's award was proper only under Idaho Code section 12-117 despite this Court's March 2013 holding in *Syringa* that section 12-117 was not exclusive. In sum, all of Grathol's arguments on appeal either ask this Court to second guess the trial court by reweighing the evidence, or fail to show the district court incorrectly applied well-established law. Thus, Grathol brought, pursued, and defended its appeal unreasonably. Because Grathol's appeal was unreasonable, ITD's case was reasonable, and ITD prevailed and met the *Acarrequi* factors, this is an "extreme and unlikely case." Thus, we award ITD its reasonable attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's just compensation award. We vacate the district court's denial of ITD's attorney fees and remand for further proceedings. We affirm the district court's award of costs and discretionary costs to ITD. Costs and attorney fees to ITD on appeal.

Justices EISMANN, HORTON and WALTERS, Pro Tem, CONCUR.

J. JONES, Justice, specially concurring.

I fully concur in the Court's opinion but feel compelled to offer some comments on the attorney fee issue. While a condemnee certainly has the right to challenge the reasonableness of a compensation offer made by a condemnor, any such challenge should be within the limits of reason. Here, Grathol clearly exceeded those limits, treating the condemnation proceeding as a ride on the gravy train. Although Grathol purchased the entire 56.8 acres in May of 2008 for $1,450,000 and although the market had declined from that time until November 11, 2010, the date of the taking, Grathol sought as much as $3,093,360 at trial for the 16.314 acres taken by the State. In its opening brief on appeal, Grathol states that Alan Johnson, Grathol's Vice-President, "testified that the value of the 16.314 acre take was $2,295,360," and "that the severance damages, added to the value of the take resulted [sic] just compensation owed in the range of $2,633,360 to $3,093,360." In its argument for severance damages based on the increased cost of future development, Grathol proposed an entitlement to severance damages of $3,527,140.32. As demonstrated in the Court's opinion, these contentions were wholly without merit. Just from a fairly plain common sense standpoint, the compensation award in the amount of $675,000 for less than one third of the property that Grathol purchased for $1,450,000 in May 2008, just before the collapse in real estate prices, was eminently reasonable.

The lamentable aspect of this case is that the State made a settlement offer to Grathol in the amount of $1,100,000 on December 15, 2011. The trial began on March 5, 2012. The State's settlement offer was reasonable and timely within in the guidelines in *Ada Cnty. Highway Dist. v. Acarrequi,* 105 Idaho 873, 878, 673 P.2d 1067, 1072 (1983) (an offer made by the condemnor a reasonable time after the institution of the action and within ten percent of the amount of the jury verdict is reasonable). Grathol declined to accept the offer, choosing to pursue litigation on flawed facts and legal theories. Grathol asserted that it incurred attorney fees of $212,699 in the litigation in district court, while the State claimed it incurred $724,136 in attorney fees, $13,079.06 in costs as a matter of right, and $167,103.59 in discretionary costs, for a total of

23

$906,318.65. While the costs of defending would likely have been substantially less, had the Attorney General's office been properly funded and not obliged to seek the assistance of outside counsel, even a much lesser expenditure would have been unnecessary if Grathol had not been shooting for the moon. It is hard to conceive of any reasonable grounds for Grathol to spurn an eminently reasonable settlement offer and drive up the costs of litigation for both sides. In my mind, this is the type of "most extreme and unlikely situation" envisioned in *Acarrequi* that would justify a fee award in favor of the condemnor at the trial level, as well as on appeal.